UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF ILLINOIS

_____

| | |
|---|---|
| IN RE YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND RELEVANT PRODUCTS LIABILITY LITIGATION * | 3:09-md-02100-DRH-PMF<br><br>MDL No. 2100<br><br>Judge David R. Herndon<br><br>COMPLAINT AND JURY DEMAND<br><br>Civil Action No.: |

_____

**TRENA WILLIAMS**             *
Plaintiff,
*
**versus**                    *
*
**BAYER CORPORATION,**
**BAYER HEALTHCARE, LLC,**
**BAYER PHARMACEUTICALS CORPORATION,**
**BAYER HEALTHCARE PHARMACEUTICALS, INC,**
**BERLEX, INC.,**
**BERLEX LABORATORIES INC.,**
**BAYER SCHERING PHARMA AG,**
**AND BAYER HEALTHCARE AG,**
Defendants.                   *

_____

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, Trena Williams, of the full age of majority and domiciled in Orleans Parish, Louisiana who respectfully represents that she has suffered injuries and incurred damages arising out of the prescription drug, Yasmin and/or YAZ, also known generically as drospirenone and ethinyl estradiol (hereinafter collectively referred to as "YAZ/Yasmin") and hereby institutes this Complaint against Defendants Bayer Corporation, Bayer Healthcare, LLC,

Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex, Inc., Berlex Laboratories Inc., Bayer Schering Pharma AG, and Bayer Healthcare AG, for her multiple causes of action against Defendants and alleges and states the following:

## PARTIES

1. Plaintiff, Trena Williama ("Plaintiff") resides in New Orleans, Louisiana.

2. Plaintiff was prescribed, purchased and ingested YAZ/Yasmin and as a result of using Defendants' YAZ/Yasmin, Plaintiff suffered injuries and serious adverse effects as a result, including, but not limited to, liver lesions and liver disease consistent with focal nodular hyperplasia.

3. Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.

4. Defendant, BAYER HEALTHCARE LLC, is, and at all times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.

5. Defendant BAYER HEALTHCARE LLC is wholly owned by defendant BAYER CORPORATION.

6. Defendant BAYER PHARMACEUTICALS CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

7. As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

8. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is, and at all times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

9. Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc. and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

10. Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. is the holder of approved New Drug Application ("NDA") for YAZ.

11. Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. is the holder of approved New Drug Application ("NDA") for YASMIN.

12. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey, 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

13. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into Bayer Healthcare AG and operate as an integrated specialty pharmaceuticals business under the new name, defendant BAYER HEALTHCARE PHARMACEUTICALS, INC.

14. Defendant BAYER SCHERING PHARMA AG, formerly known as SCHERING AG, is a pharmaceutical company that is organized and existing under the laws of the federal Republic of Germany, having a principal place of business at Mullerstrasse 178, 13353 Berlin, Germany.

15. Defendant BAYER SCHERING PHARMA AG is a corporate successor to SCHERING AG.

16. SCHERING AG was renamed BAYER SCHERING PHARMA AG effective December 29, 2006.

17. Defendant BAYER SCHERING PHARMA AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

18. Defendant BAYER SCHERING PHARMA AG is the current owner of patent(s) relating to the oral contraceptive, YASMIN.

19. Defendant BAYER SCHERING PHARMA AG is the current owner of patent(s) relating to the oral contraceptive, YAZ.

20. Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

21. Defendant BAYER AG is the third largest pharmaceutical company in the world.

22. Defendant BAYER AG is the parent/holding company of all other named Defendants.

23. Defendant BAYER AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

24. Defendants BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER PHARMACEUTICALS CORPORATION, BAYER

HEALTHCARE PHARMACEUTICALS, INC., BERLEX LABORATORIES, INC. AND BERLEX, INC., BAYER SCHERING PHARMA AG AND BAYER AG, shall be referred to herein individually by name or jointly as "Defendants."

25. At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

26. At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venture of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

27. At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptives, YAZ/Yasmin.

**JURISDICTION AND VENUE**

28. Pursuant to the Amended Case Management Order No. 9 (Agreed Order Regarding Direct Filing of Actions in the Southern District of Illinois and Service of Process in Cases Naming Particular Defendants) issued by MDL No. 2100 on April 10, 2010, both jurisdiction and venue are proper in the Southern District of Illinois. In order to eliminate delays associated with transfer to the United States District Court in the Southern District of

Illinois, of cases filed or removed to other federal district courts, and to promote judicial efficiency, any plaintiff whose case would be subject to transfer to MDL 2100 may file his or her case directly in the MDL Proceedings in the Southern District of Illinois.

## FACTUAL BACKGROUND

29. Plaintiff was prescribed and ingested YAZ/Yasmin from at least August 2008 thru at least August 2009.

30. Plaintiff suffered serious personal injuries caused by YAZ/Yasmin, including, but not limited to, liver lesions and liver disease consistent with focal nodular hyperplasia, among other adverse reactions.

31. At all relevant times, Defendants designed, manufactured, marketed, and distributed the pharmaceutical drugs YAZ/Yasmin, both of which are oral contraceptives.

32. YASMIN received FDA approval first in 2001 as a combination oral contraceptive. It is a combination of drospirenone, a progestin, and ethinyl estradiol, an estrogen. Each tablet of Yasmin is composed of a combination of 3 mg of the progestin, drospirenone, and 0.03 mg of the estrogen, ethinyl estradiol.

33. YAZ received FDA approval in 2006 as a combination oral contraceptive. YAZ is almost identical to Yasmin, but each tablet of YAZ is composed of the combination of 3 mg of the progestin, drospirenone, and only .02 mg of the estrogen, ethinyl estradiol.

34. YAZ/Yasmin are indicated for the prevention of pregnancy in women who use an oral contraceptive.

35. Combination birth control pills are referred to as combined hormonal oral contraceptives.

36. The difference between YAZ/Yasmin and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

37. YAZ/Yasmin's use of drospirenone, a diuretic, creates unique risks compared to other oral contraceptives and is known to cause problems with the gallbladder that may require surgical intervention.

38. Upon information and belief, Defendants knew or should have known about the correlation between the use of YAZ/Yasmin and significantly increased risk of permanent and debilitating side effects, including, but not limited to, multiple pulmonary emboli and other disorders including but not limited to liver disease consistent with focal nodular hyperplasia.

39. Yet, despite the wealth of scientific information available, Defendants ignored the correlation between the use of YAZ/Yasmin and the significantly increased risk of permanent and debilitating side effects, including, but not limited to, multiple pulmonary emboli and other disorders and still promoted, sold, advertised, and marketed the use of YAZ/Yasmin without sufficient warnings.

40. Defendants have been warned at least three times by the FDA, in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of YAZ/Yasmin, and minimize serious risks associated with the drug.

41. Defendants did not provide adequate warnings to doctors, the health care community and the public about the risk of serious adverse events that are described in this complaint.

42. As a result of the manufacture, marketing, advertising, promotion, distribution, the sale of YAZ/Yasmin without adequate warnings about the

risk of serious injuries, Plaintiff has sustained severe and permanent personal injuries.

43. At all relevant times, Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, sell, distribute, and/or have recently acquired the Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed YAZ/Yasmin for use as a combination oral contraceptive.

44. In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

45. In February 2003, a paper entitled *Thromboembolism associated with the new contraceptive YAZ/Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of additional reports of thromboembolism where YAZ/Yasmin was suspected as the cause, including two deaths.

46. Upon information and belief, Adverse Event data maintained by the FDA reveal a disturbing amount of serious Adverse Events, including, but not limited to, heart arrhythmias, electrolyte imbalance, hyponatremis, hyperkalemia, hyperkalemic arrhythmias, atrial fibrillation, tachycardia, bradycardia, myocardial infarction, stroke, transient ischemic attack, blood clots, embolisms, liver disease, gallbladder disease and/or sudden death.

47. Defendants have marketed their drug YAZ/Yasmin as effective for the treatment of premenstrual dysphoric disorder (hereinafter referred to as "PMDD"), premenstrual syndrome (hereinafter "PMS") and moderate acne, in addition to its FDA approved use as an oral contraceptive, and

that it lacks certain side effects, such as weight gain, bloating and water retention, common to many other oral contraceptives.

48. Defendants have received at least three warnings from the FDA beginning in 2003 and in 2008 and 2009, for misleading the public through use of television advertisements which overstate the efficiency of YAZ/Yasmin and minimize serious risks associated with the drug.

49. The use of YAZ/Yasmin has a prothrombotic effect resulting in the development of thromboses, such as pulmonary emboli and deep vein thrombosis.

50. Defendants have ignored the correlation between the use of YAZ/Yasmin and the increased risk of developing thromboses, despite being aware of the vast body of scientific and medical evidence.

51. The use of a diuretic, drospirenone, in YAZ/Yasmin creates unique and dangerous risks compared to other oral contraception. These risks include heart arrhythmias, myocardial infarction, and other adverse cardiovascular events, including, but not limited to, sudden death, stroke, transient ischemic attack, multiple pulmonary emboli, blood clots, liver, kidney and/or gallbladder disease.

52. Upon information and belief, drospirenone acts as a diuretic and blocks aldosterone, a hormone that increases the reabsorption of sodium and water and causes the body to secrete potassium, causing dehydration.

53. Upon information and belief, the use of drospirenone in YAZ/Yasmin and the blockage of aldosterone causes an imbalance in electrolytes by reducing sodium, a condition known as hyponatremis, and increasing potassium, a condition known as hyperkalemia, which may lead to serious and potentially fatal conditions known as hyperkalemia arrhythmia,

myocardial infarction, stroke, transient ischemic attacks, blood clots, multiple pulmonary emboli, and/or sudden deaths.

54. Upon information and belief, hyperkalemia arrhythmias are also associated with blood clots and/or thrombotic events such as a stroke.

55. Upon information and belief, the use of drospirenone in YAZ/Yasmin is also known to cause gallbladder disease, which could require surgical intervention.

56. Upon information and belief, drospirenone has also been known to cause kidney stone formation, which may also cause further kidney disease and require surgery.

57. Upon information and belief, drospirenone has also been known to cause liver disease which could require surgical intervention.

58. On September 15, 2009, the FDA released a warning letter to Bayer Healthcare regarding the production of YAZ noting that inspectors had uncovered testing problems at the company's plant in Berghamen, Germany during a March 2009 inspection.  FDA inspectors reported the company measured the quality of its drug ingredients based on an average of several samples, instead of reporting individual test results as required.

59. The Defendants have failed to provide adequate warnings to doctors, the health care community, the general public, including Plaintiff, about the increased risk of serious adverse events that are described herein and that have been reported by the medical community.

60. Defendants have failed to adequately warn users, including Plaintiff, of the unreasonably dangerous characteristics of their defective drug.

61. Defendants owed a legal duty to Plaintiff and the public to manufacture and sell YAZ/Yasmin without hidden and concealed defects.

62. Defendants breached such duty which proximately caused Plaintiff's damages described herein.

63. Defendants knew, or in the exercise of reasonable care, should have known that YAZ/Yasmin was defective and that Plaintiff would have reasonably expected to use the drug and be harmed by its defective conditions. These defective conditions are a direct and proximate cause of Plaintiff's injuries.

64. By reason of the foregoing, Plaintiff has sustained serious injuries and is at risk to continue to sustain injuries on a continuing basis, by virtue of the drug ingested, including heart arrhythmias, myocardial infarction, and other adverse cardiovascular events, including stroke, transient ischemic attacks, blood clots, multiple pulmonary emboli, kidney, liver and gallbladder disease, paralysis, and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, loss of earning capacity, as well as the need for lifelong medical treatment, monitoring and/or medications and the fear of developing and/or a reoccurrence of the above-named health consequences.

65. Plaintiff's serious personal injuries caused by YAZ/Yasmin, including, but not limited to, liver lesions and liver disease consistent with focal nodular hyperplasia among other adverse reactions manifested only after long-term exposure to YAZ/Yasmin. Plaintiff learned in December 2009 of the connection between YAZ/Yasmin and liver lesions and liver disease consistent with focal nodular hyperplasia among other adverse reactions. Plaintiff's causes of action against the Defendants were not known or reasonably knowable by Plaintiff until December 2009, Plaintiff had no reasonable basis to pursue a claim against Defendants, and Plaintiff

specifically pleads the doctrine of *contra non valentem agere nulla currit praescripto*.

## DEFENDANTS LIABLE UNDER THE LOUISIANA PRODUCTS LIABILITY ACT

66. Defendants were at all times relevant to this suit, and now are, engaged in the business of designing, manufacturing, testing, marketing, and/or placing into the stream of commerce pharmaceuticals for sale to, and use by, members of the public, including the YAZ/Yasmin at issue in this lawsuit. The YAZ/Yasmin placed into the stream of commerce by Defendants reached Plaintiff without substantial change and was ingested as directed. The YAZ/Yasmin was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiff.

67. Defendants are believed to be "manufacturers" under Louisiana Revised Statute 9:2800.53(1).

68. Plaintiff hereby sets forth that the Defendants are liable to Plaintiff under the Louisiana Products Liability Act, La. R.S. 9:2800.54, et seq.:

   A. At the time YAZ/Yasmin left the control of the Defendants it was defective and unreasonably dangerous due to a failure to contain adequate warnings or instructions, or, in the alternative, because it was designed in a defective manner, or, in the alternative, because the product breached an express warranty or failed to conform to other expressed factual representations upon which Plaintiff's physicians justifiably relied, or because it breached an implied warranty, all of which proximately caused the damages for which Plaintiff seeks recovery herein;

   B. YAZ/Yasmin was not reasonably safe as designed, taking into account the foreseeable risks involved in its use at the time the product left the possession of the Defendants, and that such risks clearly outweighed the utility of the product or its therapeutic benefits;

  C. At the time YAZ/Yasmin left the control of the Defendants it possessed a dangerous characteristic that may cause damage, and it was not reasonably safe due to inadequate or defective warnings or instructions that were known or reasonably scientifically knowable at the time the product left the possession of the Defendants. Specifically, although the Defendants were well aware that YAZ/Yasmin could potentially cause heart arrhythmias, myocardial infarction, and other adverse cardiovascular events, including sudden death, stroke, transient ischemic attack, multiple pulmonary emboli, blood clots, liver, kidney and/or gallbladder disease, warnings of such adverse health conditions were either not included on the package insert for these products or they were not adequate to inform reasonably prudent physicians and consumers. The Defendants failed to use reasonable care to provide an adequate warning of these dangerous characteristics to handlers and users of YAZ/Yasmin.

  D. The Defendants' warnings or instructions were not of a nature that a reasonably prudent drug company in the same or similar circumstances would have provided with respect to the danger. There were no warnings or instructions that communicated sufficient information on the dangers and safe use of the product taking into account the characteristics of the product, and/or the ordinary knowledge common to then physician who prescribes and the consumer who purchases the product, such as the Plaintiff.

  E. The YAZ/Yasmin manufactured and supplied by the Defendants was further defective due to inadequate post-marketing warning or instruction because, after the Defendants knew or should have known of the risks of injury from YAZ/Yasmin associated with the long-term use as commonly prescribed, they failed to promptly respond to and adequately warn about heart arrhythmias, myocardial infarction, and other adverse cardiovascular events, including sudden death, stroke, transient ischemic attack, multiple pulmonary emboli, blood clots, liver, kidney and/or gallbladder disease, among other adverse reactions;

69. The YAZ/Yasmin at issue is unreasonably dangerous for long-term use in that the risks of developing deep vein thrombosis, heart arrhythmias, myocardial infarction, and other adverse cardiovascular events, including sudden death, stroke, transient ischemic attack, multiple pulmonary

emboli, blood clots, liver, kidney and/or gallbladder disease, among other adverse reactions outweigh the benefits of the drug.

70. At all times pertinent and material hereto, there existed alternative feasible drugs to provide comparable long-term benefits of YAZ/Yasmin without the attendant risks of developing deep vein thrombosis, heart arrhythmias, myocardial infarction, and other adverse cardiovascular events, including sudden death, stroke, transient ischemic attack, multiple pulmonary emboli, blood clots, liver, kidney and/or gallbladder disease, among other adverse reactions.

71. At all times pertinent and material hereto, Defendants knew that YAZ/Yasmin was unreasonably dangerous and/or defective as set forth herein.

72. In the alternative, Defendants should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions of YAZ/Yasmin, had it reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

73. The YAZ/Yasmin manufactured by Defendants is unreasonably dangerous due to an inadequate warning that, at the time the drug left Defendants' control, possessed a characteristic that might cause damage or injury to patients including Plaintiff, and yet Defendants failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to prescribing physicians and/or users of the drug.

74. In addition, and in the alternative, the YAZ/Yasmin manufactured by Defendants is unreasonably dangerous in design, in that, at the time the drug left the Defendants' control, there existed, upon information and

belief, an alternative design for the drug that was capable of preventing Plaintiff's injuries, and the likelihood of causing the Plaintiff's injuries and the gravity of that harm outweighed the burden (if any) on Defendants in adopting such alternative design and the adverse effect (if any) on the utility of the drug.

75. The Defendants knew or in light of reasonably available scientific knowledge should have known about the danger that caused the injuries for which Plaintiff seeks recovery. A reasonably competent physician who prescribed YAZ/Yasmin and a reasonably competent plaintiff who consumed YAZ/Yasmin would not realize its dangerous condition.

76. The reasonably foreseeable use of YAZ/Yasmin, that is ingestion for the prevention of pregnancy in women, such as Plaintiff, who elect to use an oral contraceptive, involved substantial dangers not readily recognizable by the ordinary physician who prescribed YAZ/Yasmin or the patient, like Plaintiff, who consumed YAZ/Yasmin.

77. Defendants failed to provide adequate warnings based on what they knew or should have known about the adverse effects of YAZ/Yasmin.

78. Plaintiff and her physicians did not know, nor had reason to know, at the time of the use of YAZ/Yasmin, or at any time prior to its use, of the existence of the above-described defects and inadequate warnings.

79. These defects caused serious injuries to Plaintiff when the product was used in its intended and foreseeable manner, and in the manner recommended by Defendants or in a non-intended manner that was reasonably foreseeable.

80. Defendants are therefore liable to Plaintiff for any and all damages arising from her deep vein thrombosis and other adverse reactions, and/or other purchase and/or use of the drug.

## **DAMAGES**

81. It is believed and alleged that Plaintiff's ingestion and use of the YAZ/Yasmin, as prescribed, caused and/or contributed to her liver and liver disease consistent with focal nodular hyperplasia among other adverse reactions and/or other associated risks of developing heart arrhythmias, myocardial infarction, and other adverse cardiovascular events, including sudden death, stroke, transient ischemic attack, multiple pulmonary emboli, blood clots, liver, kidney and/or gallbladder disease.

82. As a direct and proximate result of the purchase and use of Defendants' YAZ/Yasmin, and the liver lesions and liver disease consistent with focal nodular hyperplasia among other adverse reactions resulting therefrom, Plaintiff has incurred, and will continue to incur, medical expenses.

83. As a direct and proximate result of the purchase and use of Defendants' YAZ/Yasmin, and the liver lesions and liver disease consistent with focal nodular hyperplasia among other adverse reactions resulting therefrom, Plaintiff has incurred, and will continue to incur, a loss of earnings and/or loss of earning capacity.

84. As a direct and proximate result of the purchase and use of Defendants' YAZ/Yasmin, and the liver lesions and liver disease consistent with focal nodular hyperplasia among other adverse reactions resulting therefrom, Plaintiff has suffered, and will continue to suffer, physical pain, mental anguish, emotional distress, disfigurement, disability, and loss of enjoyment of life.

85. As a producing and proximate result of the above-described acts and omissions of Defendants, Plaintiff has incurred actual damages in excess of $75,000.00, including but not limited to:

    i. Reasonable and necessary medical expenses incurred in the past;

    ii. Reasonable and necessary medical expenses reasonably likely to be incurred in the future;

    iii. Conscious physical pain and suffering experienced in the past;

    iv. Conscious physical pain and suffering reasonably likely to be experienced in the future;

    v. Mental anguish in the past;

    vi. Mental anguish likely to be experienced in the future;

    vii. Physical disfigurement in the past;

    viii. Physical disfigurement likely to be experienced in the future;

    ix. Physical impairment in the past;

    x. Physical impairment likely to be experienced in the future;

    xi. Loss of earnings in the past;

    xii. Loss of earnings/earning capacity likely to be experienced in the future;

    xiii. Pre and post-judgment interest at the lawful rate;

    xiv. Such other applicable damages as the Court deems appropriate.

**WHEREFORE**, Plaintiff prays that after this Complaint is served on Defendants it be deemed good and sufficient, and upon final determination of these causes of action Plaintiff receives a judgment against Defendants separately and individually as well as jointly for a reasonable amount for the following:

    a) Actual damages as alleged against Defendants in Paragraph 85;

    b) Costs of court necessary for filing and preparation of this case for trial;

    c) Prejudgment interest and legal interest on the judgment;

     d) All such other and further relief at law and in equity to which

    Plaintiff may show himself to be justly entitled.

Plaintiff hereby demands a trial by jury.

            Respectfully submitted,

            __S/Allan Berger_____
            ALLAN BERGER (BAR NO. 2977)
            ANDREW J. GEIGER (BAR NO. 32467)
            **ALLAN BERGER & ASSOCIATES PLC**
            4173 Canal Street
            New Orleans, Louisiana 70119
            Telephone: (504) 486-9481
            Fax:  (504) 483-8130
            aberger@allan-berger.com
            Attorneys for Plaintiff