UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE YASMIN AND YAZ | ) 3:09-md-02100-DRH-PMF |
| (DROSPIRENONE) MARKETING, SALES | ) |
| PRACTICES AND PRODUCTS LIABILITY | ) MDL No. 2100 |
| LITIGATION | ) |
| | ) |

**This Document Relates to:**

**ALL CASES**

## I.   INTRODUCTION

This matter is before the Court for the purpose of resolving choice of law considerations pertaining to the issues of attorney-client privilege and the work-product doctrine. To date, Bayer has produced just under 3 million documents (approximately 65 million pages), and has withheld 12,857 unique documents (18,808 documents counting duplicates) as shielded by attorney-client privilege. Of those unique documents, the Bayer defendants assert that 6,282 are also protected under the work-product doctrine. The plaintiffs have currently asserted a representative challenge with regard to 330 of the allegedly privileged documents. The Bayer defendants report that this challenge affects 243 unique documents, 52 of which are also allegedly protected under the work-product doctrine.

The parties have attempted to independently resolve the dispute over the 330 challenged documents but are at an impasse with regard to the standard that should be applied when assessing whether the documents are protected under either the attorney-client privilege or the work-product doctrine. The first step in resolving this resolving this matter includes assessing both vertical and horizontal choice of law questions. The parties have asked the Court to resolve these choice of law questions and to provide direction with respect to procedure for addressing the remainder of the disputed issues.

## II.    BACKGROUND

This multidistrict litigation ("MDL") concerns the prescription drugs Yaz, Yasmin, and Ocella and involves cases originating in nearly every state in the country as well as the District of Columbia and the territory of Puerto Rico. The basis for the Court's jurisdiction in these coordinated proceedings is diversity. The claims brought by the plaintiffs are state based claims for which state law supplies the rule of decision. The Bayer defendants, however, have asserted several federally based defenses. As of the last status conference, the Bayer defendants report that 5,998 MDL cases have been served.

The MDL cases originate from three sources:  (1) cases filed directly in this MDL that originated in this Court's judicial district ("local cases");  (2) cases that have been transferred from another district court pursuant to 28 U.S.C. § 1407 ("transfer cases");  and (3) cases that originated outside of this

Court's judicial district and that were filed directly into the MDL ("foreign direct filed cases") pursuant to the Court's direct filing Order (MDL 2100 Docs 669 (original direct filing order), 1137(amended direct filing order), & 1462 (second amended direct filing order)).

### III.    ANALYSIS

**A.    Work-Product Doctrine**

The Bayer defendants contend that a portion of the documents are protected from discovery by the work-product doctrine.  The work-product doctrine, established in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947), is now codified in the Fed. R. Civ. P. 26(b)(3):  "[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  The work-product doctrine is governed by federal law – even where the basis of federal jurisdiction is diversity.  *See e.g., Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 276 (N.D. Ill. 1997) (Alesia, J.).

Accordingly, with regard to documents allegedly protected under the work-product doctrine, federal law controls.

**B.      Attorney-Client Privilege**

**1.      Relevant Authority**

**a.      Federal Rule of Evidence 501**

Federal Rule of Evidence 501 provides the rule for determining which body of law governs matters of privilege.  Thus, the Court's analysis begins with the text of Rule 501, which provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501.

**b.      Rule 501:  Legislative History, State Law Proviso, and Reliance on Advisory Committee Notes**

**i.      Legislative History and the State Law Proviso**

Originally, Article V of the Preliminary Draft of the Evidence Rules as proposed by the Advisory Committee consisted of thirteen rules recognizing specific privileges.  23 Charles Alan Wright & Kenneth Graham, Jr., *Federal Practice And Procedure: Evidence* § 5421.   The proposed rule also made no provision for the application of state privilege law in diversity actions and clearly indicated that state privilege law should be disregarded.  *Id.*  This attempt to

federalize the law of privilege was highly controversial and Congress consequently became actively involved in the rulemaking process.  *See Id.*  Congress "completely rejected" the Advisory Committee's privilege scheme, *id.*, and adopted the current version of Rule 501.  *Id.*

The current version of Rule 501 was drafted by the House Judiciary Committee and includes a state law proviso designed to require the application of state privilege law in proceedings governed by *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938).  23 Charles Alan Wright & Kenneth Graham, Jr., *Federal Practice And Procedure: Evidence* § 5421; Fed. R. Evid. 501 Advisory Committee Notes, H.R. Rep. No.93-650.  In rendering its decision, the Court is mindful of the rationale underlying Rule 501's state law proviso:

> [The] rationale underlying the proviso is that federal law should not supersede that of the States in substantive areas such as privilege absent a compelling reason.  The Committee believes that in civil cases in the federal courts where an element of a clam or defense is not grounded upon a federal question, there is no federal interest strong enough to justify departure from State policy.

Fed. R. Evid. 501, Advisory Committee Notes, H.R. Rep. No. 93-650.

The Court also finds the review of the congressional history of Rule 501, provided by the Third Circuit Court of Appeals in an opinion authored by then Chief Judge Seitz in *Samuelson v. Susen,* 576 F.2d 546 (3rd Cir. 1978) to be instructive on the matter.  In *Samuelson*, the Third Circuit Court of Appeals explained that the congressional intent in enacting Rule 501 was to effectuate "state substantive rights, laws and policies in controversies where there is no

substantial federal interest" and to preserve "the domain of state privilege law."

*Id.* at 550. The court also noted that the decision to apply state privilege law in diversity actions was supported by the following contentions:

> (1) privilege rules are and should continue to be considered substantive for Erie purposes;
>
> (2) privilege rules are outcome determinative;
>
> (3) where state law supplies the rule of decision, state rules of privilege should be applied because there is no federal interest substantial enough to justify departure from state policy; and
>
> (4) state policy regarding privilege should not be thwarted merely because of diversity jurisdiction, a situation which, if allowed, would encourage forum shopping.

*Id. citing* H.R. Rep. No. 650, 93rd Cong., 1st Sess. 9 (1973).

## ii.     Reliance on the Advisory Committee Notes

The Advisory Committee Notes that accompany Rule 501 consist of three reports: (1) House Report Number 93-650; (2) Senate Report Number 93-1277; and (3) Conference Report Number 93-1597. House Report Number 93-650 was drafted by the House Judiciary Committee and accompanied the House's version of Rule 501 when it was first sent to the House floor for consideration. 23 Charles Alan Wright & Kenneth Graham, Jr., *Federal Practice And Procedure: Evidence* § 5421. After approval by the House, the Senate Judiciary Committee considered the House's version of Rule 501. *Id.* The Senate Judiciary Committee, in Senate Report Number 93-1277, criticized certain provisions of the House's version of Rule 501 and proposed an amendment to the state law proviso

contained therein.  *Id.*  The proposed amendment was approved in the Senate without any debate.  *Id.*

The Senate's version of Rule 501 was then considered by the Conference Committee.  *Id.*  The Conference Committee ultimately rejected the Senate's version of Rule 501 opting instead to adopt Rule 501 as originally proposed by the House.  *Id.*  The Conference Committee's commentary explaining its reasoning and addressing some of the concerns that had been expressed in Senate Report Number 93-1277 is contained in Conference Report Number 93-1597.  The House's version of Rule 501 was then adopted without further debate.  *Id.*

Any reliance this Court places on the Advisory Committee Notes that accompany Rule 501 is done in light of the legislative history discussed above.  Of particular note, is the fact that the commentary in Senate Report Number 93-1277 was made in reference to the Senate's version of Rule 501 which was rejected by the Conference Committee and therefore may not be an accurate indicator of Congressional intent with regard to Rule 501 as it was ultimately enacted.  *See* 23 Charles Alan Wright & Kenneth Graham, Jr., *Federal Practice And Procedure: Evidence* § 5434 n.15 & n.17 (criticizing courts for relying on the Senate Report as evidence of congressional intent).

### c. Rule 501 and Diversity Cases

Pursuant to Rule 501, "with respect to an element of a claim or defense as to which State law supplies the rule of decision," matters of privilege are to "be determined in accordance with State law." Fed. R. Evid. 501. This proviso has consistently been interpreted as requiring application of state privilege law in diversity based actions. *See* 2 Paul R. Rice & John B. Corr, *Attorney-Client Privilege in the U.S.* § 12:16 (2010). *See also Dunn v. Washington County Hosp.*, 429 F.3d 689, 693 (7th Cir. 2005) (in a federal question case the Appellate Court noted that Illinois "peer review" privilege would not apply because state privilege only applies in diversity based actions); Fed. R. Evid. 501, Advisory Committee Notes ("The proviso is designed to require the application of State privilege law in civil actions and proceedings governed by *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)").

When Rule 501 requires application of state privilege law and there are factual connections to more than one state, federal courts apply state choice of law rules to determine which state's privilege law controls.[1]  Generally, a federal court sitting in diversity applies the choice of law rules emanating from the state in which it sits. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir.

---

[1] Professor Paul Rice, the attorney-client privilege expert appointed in the *Vioxx* litigation, addresses this concept in his treatise on attorney-client privilege law in the United States. *See* 2 Paul R. Rice & John B. Corr, *Attorney-Client Privilege in the U.S.* § 12:17 (2010) (noting that Rule 501's directive to apply state privilege law "intersects with the *Erie* doctrine" and requires the application of state choice of law rules in determining which state's privilege law controls).

2006).  When a case is transferred, however, the transferee court applies the

choice of law rules of the state in which the transferor court sits.  *Chang v. Baxter*

*Healthcare Corp.*, 599 F.3d 728, 732 (7th Cir. 2010).  There is no controlling

authority addressing this matter with regard to cases that (1) are directly filed in

an MDL pursuant to a direct filing order and (2) originated outside of the MDL

court's judicial district.[2]

> **d.    Rule 501 and Cases Involving Federal and State Claims or Defenses**
>
> > **i.    Federal question cases and pendent state law claims**

The Seventh Circuit has held that in federal question cases federal

privilege law applies even when the information sought would also be relevant to a

pendent state claim.  *Memorial Hospital for McHenry County v. Shadur*, 664

F.2d 1058, 1061 n.3 (7th Cir. 1981).  In so holding, the Appellate Court reasoned

that "it would be meaningless to hold the communication privileged for one set of

claims and not the other."  *Id.*[3]

---

[2] In addition, the agreed order entered in this MDL that allows for direct filing expressly states that the parties' agreement to permit direct filing would not impact the choice of law that otherwise would apply to the direct filed actions (MDL 2100 Docs 669 (original direct filing order), 1137(amended direct filing order), & 1462 (second amended direct filing order)).

[3]  The Advisory Committee Notes that accompany Rule 501 expressly state ("[in] Federal question civil cases, federally evolved rules on privilege should apply since it is Federal policy which is being enforced. *It is also intended that the Federal law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case*").  Fed. R. Evid. 501, Advisory Committee Notes, S. Rep. No. 93-1277 (emphasis added).  A number of courts have relied on this statement in concluding that federal question cases involving pendent state claims are governed by federal privilege law.  This statement, however, is contained in the senate report that accompanies Rule 501

### ii. Diversity cases with state based claims and one or more federally based defenses

The Court's research reveals no Seventh Circuit authority addressing the controlling privilege law in diversity actions based on state causes of action that also involve federally based defenses.

The Advisory Committee Notes to Rule 501, however, provide some guidance in this matter. Pursuant to the Conference Committee's Report, "If an item of proof tends to support or defeat a claim or defense, or an element of a claim or defense, and if state law supplies the rule of decision for that claim or defense, then state privilege law applies to that item of proof." Fed. R. Evid. 501, Advisory Committee Notes, Conf. Rep. No. 93-1597. Conversely, in diversity cases "where a claim or defense is based upon federal law.....federal privilege law will apply to evidence relevant to the federal claim or defense." *Id.*[4]

There is no clear congressional intent with regard to whether federal or state privilege law should govern when, in a diversity action, an item of proof is relevant to both federal and state elements. *See* 23 Charles Alan Wright &

---

and was made in reference to the senate's version of Rule 501. The Conference Report is silent on the issue and, as a result, congressional intent is unclear. Accordingly, as to the issue of what law governs pendent state law claims in federal question cases, the Court relies on Seventh Circuit authority and not the commentary contained in senate report No. 93-1277.

[4] This portion of the Conference Report appears to reject the position taken by the Senate Judiciary Committee regarding what constitutes an "element" of a claim or defense. *See* 23 Charles Alan Wright & Kenneth Graham, Jr., *Federal Practice And Procedure: Evidence* § 5434 (pursuant to the Conference Report "it makes no difference whether the supposedly privileged matter is direct or circumstantial evidence of a state claim; if it is in a line of proof that culminates in an element of a state claim or defense, then state rules of privilege apply").

Kenneth Graham, Jr., *Federal Practice And Procedure: Evidence* § 5434

(although the Senate Judiciary Report proposes application of the law favoring

reception of the evidence, the Conference Committee Report is silent on the issue).

2.      **Analysis**

        a.      **Illinois choice of law principles do not control simply because this MDL Court is sitting in diversity in Illinois**

Plaintiffs contend that, because this Court is sitting in diversity in

Illinois, Illinois is the forum and Illinois choice of law principles control.

Plaintiffs' argument is incorrect because this MDL involves thousands of cases,

many of which did not originate in this judicial district. As noted above (section

II), cases in this MDL originate from three sources: (1) cases filed directly in this

MDL that originated in this Court's judicial district ("local cases"); (2) cases that

have been transferred from another district court pursuant to 28 U.S.C. § 1407

("transfer cases"); and (3) cases that originated outside of this Court's judicial

district and that were filed directly into the MDL ("foreign direct filed cases")

pursuant to the Court's direct filing Order (MDL 2100 Docs 669 (original direct

filing order), 1137 (amended direct filing order), & 1462 (second amended direct

filing order)).

In the event that state law governs privilege matters in this MDL, the

governing choice of law rules will depend on each case's source of origin. As to

the local cases, Illinois choice of law rules control. *Tanner v. Jupiter Realty*

*Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). As to transfer cases, however, Illinois choice of law rules are not controlling.[5] Instead, the choice of law rules that govern are the rules of the jurisdiction from which each case was transferred. *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732 (7tth Cir. 2010).

As to the foreign direct filed cases, the choice of law decision is not as clear. Foreign direct filed cases are filed in this Court pursuant to a direct filing order (Case Management Order Number 9).[6] This agreed order authorizes the direct filing of cases that originated outside of this judicial district. The order expressly provides that the parties' direct filing agreement will not impact the choice of law that otherwise would apply to the direct filed actions.

In general, direct filing orders are beneficial to both parties because they streamline the litigation and help to eliminate the judicial inefficiency involved in the MDL transfer process. *See* Eldon Fallon, *Bellweather Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2353 (2008) (the direct filing procedure "eliminates the judicial inefficiency that results from two separate clerk's offices having to docket and maintain the same case and three separate

---

[5] This is not the first time this issue has arisen in this MDL. The Court has explained, in previous MDL decisions, that transfer cases are not governed by Illinois choice of law principles. *See e.g., In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Relevant Products Liability Litigation*, 2010 WL 3937414, *4 (S.D.Ill.) (S.D.Ill., Oct. 4, 2010) (Herndon, C.J.); *In re Yasmin and Yaz (DROSPIRENONE) Marketing, Sales Practices and Products Liability Litigation*, 2010 WL 1963202, *2 (S.D. Ill. May 14, 2010) (Herndon, C.J.),
[6] MDL 2100 Docs 669 (original direct filing order), 1137(amended direct filing order), & 1462 (second amended direct filing order).

courts (the transferor court, the MDL Panel, and the transferee court) having to preside over the same matter."). However, direct filing orders also present difficult choice of law issues. *See e.g., In re Express Scripts, Inc., PBM Litig.,* MDL No. 1672, 2007 WL 4333380, at *1-2 (E.D. Mo. Dec. 7, 2007) (not reported) (Limbaugh, J.) (applying the choice-of-law rules of the MDL forum to foreign case that was directly filed in the MDL); *In re Bausch & Lomb Inc. Contacts Lens Solution Prods. Liab. Litig.,* MDL No. 1785, 2007 WL 3046682, at *3 (D.S.C. Oct. 11, 2007) (Norton, J.) (noting that "it would be an odd result to subject plaintiffs to [the law of the MDL forum] simply because they took advantage of the direct filing procedure - a procedure that provides benefits to all parties and preserves judicial resources").

The Court concludes that the better approach is to treat foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated. For purposes of this analysis, the Court considers the originating state to be the state where the plaintiff purchased and was prescribed the subject drug. Thus, for a foreign direct filed member action involving a plaintiff that purchased and was prescribed the subject drug in Tennessee, the Court will treat that plaintiff's claims as if they were transferred to this MDL from a district court in Tennessee.

### b.  Wholesale Application of Federal Attorney-Client Privilege Law

In the instant case, application of state attorney-client privilege is a daunting task that involves considering the choice of law principles of all fifty states (as well as the District of Columbia and Puerto Rico) (*see* sections III(B)(1)(c) & III(B)(2)(a)).  The Bayer defendants argue that engaging in such an analysis would be overly burdensome and contend  that an appropriate alternative is the wholesale application of federal law.  In support of their argument, the Bayer defendants point to the procedure utilized in the *Vioxx* MDL and outlined in *In re Vioxx Products Liability Litigation*, 501 F. Supp. 2d 789 (E.D. La 2007) (Fallon, J.).[7]

In the *Vioxx* litigation, a discovery dispute arose regarding the defendant's claim of attorney-client privilege over approximately 500,000 pages of documents.  The *Vioxx* court appointed Professor Paul R. Rice, an expert in privilege law, to review a representative sample of 2,000 documents withheld by the defendant and to make recommendations on whether the defendant's claims of privilege should be upheld.  *Id.* at 789-795.  During this process, Professor Rice applied federal privilege law standards, taking into account (1) "the law of attorney-client privilege both in general and in the context of [the *Vioxx*] multidistrict litigation" and (2) standards "common to all definitions of the attorney-client privilege."  *Id.* at 794-795.

---

[7] Jurisdiction in the *Vioxx* litigation was diversity based and the coordinated proceedings involved cases that originated in jurisdictions across the country. *Vioxx*, 501 F. Supp. 2d at 789-790.

In the instant case, the Court is reluctant to follow the path taken by the *Vioxx* MDL. The *Vioxx* MDL's jurisdiction was based on diversity and the claims asserted by the plaintiffs turned on questions of state law. The *Vioxx* decision, however, does not address its reasoning for applying federal privilege law or Rule 501's state law proviso.

As discussed above (*see* sections III(B)(1)(b)(i); III(B)(1)(c); and III(B)(1)(d)), Rule 501 is designed to require the application of state privilege law in actions based on questions of state law between citizens of different states. Nothing in Rule 501 indicates that federal privilege standards may be applied wholesale to state question diversity proceedings simply because application of state privilege standards would be overly burdensome. In fact, the rationale underlying Rule 501 and its congressional history, which emphasize the view that privilege law is substantive and that federal law should not supersede that of the state law in diversity actions absent a compelling reason,[8] militate against the wholesale application of federal law for purposes of convenience (*see* section III(B)(1)(b)).

Further, although the Seventh Circuit has held that federal law applies in federal question cases (even where the same evidence is relevant to a pendent state claim), *Shadur,* 664 F.2d at 1061 n.3, the Seventh Circuit has not

---

[8] The House Report also states "where an element of a claim or defense is not grounded upon a federal question, there is no federal interest strong enough to justify departure from State policy." Fed. R. Evid. 501 Advisory Committee Notes, H.R. No. 93-650.

had occasion to address the wholesale application of federal law in diversity actions premised on state law claims.

Finally, the Conference Committee Report that accompanies Rule 501 indicates that in diversity actions based on questions of state law, a bifurcated approach is contemplated; privilege matters relevant to state claims or defenses will be governed by state privilege law and privilege matters relevant to federal claims or defenses will be governed by federal privilege law (*see* sections III(B)(1)(b)(i) & III(B)(1)(d)(ii)).

Accordingly, for the reasons discussed above, the Court finds that: (1) privilege matters that are relevant to an element of a federal defense will be governed by federal privilege law; and (2) privilege matters that are relevant to an element of a claim or defense for which state law supplies the rule of decision will be governed by state privilege law.

### c.    Privileged Material Relevant to Both Federal and State Elements

This Court's decision may result in a scenario where the same privileged material is deemed relevant both to a state claim and a federal defense. Rule 501 does not expressly address what law must be applied in such a scenario. The Senate Report proposes that in diversity actions when the same evidence is relevant to state and federal elements, the "rule favoring reception of the evidence should be applied."  Fed. R. Evid. 501 Advisory Committee Notes S.R. No. 93-1277.  The Conference Committee Report, however, is silent on the issue and

Congressional intent is therefore unclear. Fed. R. Evid. 501 Advisory Committee Notes C.R. No. 93-1597.

The Seventh Circuit has not directly addressed the issue. However, in *Estate of Suskovich v. Anthem Health Plans of Virginia, Inc.,* 553 F.3d 559, 570 (7th Cir. 2009), the Appellate Court indicated that it would favor application of the approach proposed by the Senate Judiciary Committee. *See Estate of Suskovich*, 553 F.3d at 570 (noting with approval the district court practice of applying Federal Rule of Evidence 601, which creates a broad presumption of competency, when the evidence relates to state and federal claims and finding that the practice is consistent with the approach proposed by the Senate Judiciary Committee in Rule 501's Advisory Committee Notes). In addition, as discussed in section III(B)(1)(d)(i) above, in *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981), the Appellate Court held that in a federal question case, where the same evidence is relevant to both state and federal elements, federal privilege law should govern because "it would be meaningless to hold the communication privileged for one set of claims and not the other." *Id.*

Considering the above, the Court concludes that if the allegedly privileged material is relevant to both federal and state elements, the privilege law favoring admission shall govern (assuming of course there is a difference between the relevant federal and state privilege laws).

### d. When state law applies, section 139 of the Second Restatement will govern choice of law considerations

As noted, to determine which state's privilege law governs, the Court must look to state choice of law principles. In the instant case, this requires considering the choice of law principles applicable in all fifty states, the District of Columbia, and Puerto Rico. After conducting this analysis[9] and for the reasons outlined below, the Court concludes that section 139 of the Restatement (Second) Conflict of Laws (1971) ("Second Restatement") will apply to privilege matters governed by state law in this MDL.

The Court's research reveals that a majority of states have not established a choice of law doctrine regarding privileges. Courts that have analyzed conflicting privilege laws, however, tend to favor application of the most significant relationship test found in section 139 of the Second Restatement or of a similar test favoring application of the law of the state with the most significant relationship with the privileged communication – such as the law of the state where the communication is centered.

Of those jurisdictions that do not appear to have considered the issue (and therefore have not had occasion to accept or reject section 139), the majority (1) apply the Second Restatement to one or more other areas of law or (2) apply an interest based analysis that reflects the principles underlying section 139 of the Second Restatement. Given that these jurisdictions do not have a firmly

---

[9] The Court provides a detailed review of the relevant case law from these jurisdictions in section III(B)(2)(f) below.

established rule with regard to resolving privilege choice of law matters and these jurisdictions have applied the Second Restatement or a similar interest based analysis to other conflict of law issues, the Court concludes that, if presented with the issue, courts in these jurisdictions would apply the privilege law of the state with the most significant relationship to the communication and would be guided in that decision by the principles found in section 139 of the Second Restatement.

Finally, a small minority of jurisdictions continue to follow the traditional choice of law principles largely reflected in the original Restatement (First) of Conflict of Laws (1934) ("First Restatement").  The First Restatement, however, does not specifically address how privilege choice of law matters should be resolved.  Under the First Restatement, matters are either substantive or procedural and procedural matters are to be governed by the law of the forum. Sections 596 and 597 of the First Restatement, specifically provide that the law of the forum governs issues of "the competency and credibility of witnesses" and the "admissibility of a particular piece of evidence."  The Attorney-client privilege, however, is not a rule of competency or credibility.  Nor can it be classified as a procedural rule.[10]

---

[10] The Court notes that some courts have concluded that the issue of attorney-client privilege is procedural in nature and have therefore applied the law of the forum.  *See e.g., Union Planters Nat'l Bank v. ABC Records, Inc*., 82 F.R.D. 472 (W.D. Tenn. 1979).  The Court does not rely on these decisions because Federal Rule of Evidence 501 rejects the notion that the attorney-client privilege issue is procedural.  Fed. R. Evid. 501 Advisory Committee Notes, H.R. 93-650.  As was well said by the Second Circuit Court of Appeals in *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 555 n.2 (2d Cir. 1967):

Because the First Restatement does not address this issue and because these jurisdictions do not appear to have otherwise established rules for assessing privilege choice of law matters, the Court believes that the proper conflicts rule and the rule which would be applied by these jurisdictions is section 139 of the Second Restatement.

### e. Section 139 of the Second Restatement – relevant considerations

The Second Restatement provides that the state with the most significant relationship with the communication is usually the state where the communication took place, *i.e.*, "the state where an oral interchange between persons occurred, where a written statement was received or where an inspection was made of a person or thing." Restatement (Second) of Conflict of Laws § 139, Comment e (1971).

Further, under the Second Restatement, if a communication is privileged in the state to which it bears the most significant relationship, but not

---

[A] rule of privilege is unlike the ordinary rules of practice which refer to the processes of litigation, in that it affects private conduct before the litigation arises. Rules of privilege are not mere housekeeping rules which are rationally capable of classification as either substantive or procedural for purposes of applying the doctrine of [*Erie*] Such rules 'affect people's conduct at the stage of primary private activity and should therefore be classified as substantive or quasi-substantive.

(internal citations omitted). The Court also notes that if it were to treat any state's attorney-client privilege as merely procedural that state's privilege law could not be applied because federal courts sitting in diversity are required to adhere to federal rules of procedure.

privileged in the forum, the law of the state with the most significant relationship

to the communication will apply if there is a special reason not to apply the law of

the forum.  *See* Restatement (Second) of Conflict of Laws § 139.  Factors to be

considered in assessing whether a special reason exists include:

> (1) the number and nature of the contacts that the state of the forum
> has with the parties and with the transaction involved, (2) the relative
> materiality of the evidence that is sought to be excluded, (3) the kind
> of privilege involved and (4) fairness to the parties.

Restatement (Second) of Conflict of Laws § 139, Comment d (1971).  In addition,

where the contacts with the forum are "few and insignificant" then the forum will

likely apply the law of the state with the most significant relationship with the

communication.  *Id.* Finally, "fairness to the parties is another important

consideration."  Fairness to the parties requires consideration of the parties'

reasonable expectations of confidentiality which were likely based on the law of

the state which has the most significant relationship to the communication.  *See*

*Id.*

Considering the above, in the Court's view, where the communication

at issue is between individuals foreign to the forum, whose relationship is

centered outside of the forum, and whose communications regard subject matter

not centered in the forum, a special reason exists for not applying the law of the

forum and the law of the state with the most significant relationship to the

communication should be applied.  Accordingly, in the instant case, where state

privilege law applies, the Court expects that in most if not all instances the law of the state with the most significant relationship to the communication will govern the existence and scope of attorney-client privilege.

### f.    State Choice of Law Principles

Courts in thirteen states, the District of Columbia, and Puerto Rico, have adopted section 139 and/or have cited with approval provisions of section 139 when resolving privilege choice of law issues:

1. **Colorado:**  *See People v. Thompson,* 950 P.2d 608, 611 (Colo. App. 1997) (concluding that section 139 provided the appropriate framework for analyzing the issue of marital privilege).

2. **Delaware:**  *See 3Com Corp. v. Diamond II Holdings, Inc.,* 2010 WL 2280734, *5 (Del. Ch. 2010 May 31, 2010) (not reported) (applying section 139 to an attorney-client privilege issue).

3. **District of Columbia:**  *See Independent Petrochemical Corp. v. Aetna Cas. and Sur. Co.*  117 F.R.D. 292, 295-296 (D.D.C. 1987) (because the District of Columbia typically applies an "interest analysis" approach and relies on the Second Restatement for other choice of law matters it would likely adopt section 139 for privilege matters).

4. **Illinois:**  *See Allianz Ins. Co. v. Guidant Corporation,* 869 N.E.2d 1042, 1048-1049 (Ill. App. 2007) (section 139 governs issue of attorney-client

privilege); *Sterling Finance Management, L.P. v. UBS PaineWebber, Inc.,* 782 N.E.2d 895, 903-904 (Ill. App. 2002) (same).

5. **Iowa:** *See State v. Eldrenkamp,* 541 N.W.2d 877 (Iowa 1995) (looking to section 139 for guidance on privilege issue).

6. **Kentucky:** *See Saleba v. Schrand,* 300 S.W.3d 177, 181-183 (Ky. 2009) (applying section 139 to privilege issue).

7. **Maine:** *See State v. Lipham,* 910 A.2d 388, 392 n.3 (Me. 2006) (considering section 139 when assessing choice of law issue regarding marital privilege).

8. **Ohio:** *See Woefling v. Great-West Life Assur. Co.,* 285 N.E.2d 61, 221 n.2 (Ohio App. 1972) (finding that Illinois physician-patient privilege controlled and citing to § 139).

9. **Minnesota:** *See State v. Heaney*, 689 N.W.2d 168, 175-177 (Minn. 2004) (applying the most significant relationship approach of section 139 to privilege choice of law analysis).

10. **New York:** *See Brandman v. Cross & Brown Co. of Florida, Inc.,* 479 N.Y.S.2d 435, 436-437 (N.Y. Sup. 1984) (referencing section 139 and stating that the attorney-client privilege is substantive for purposes of choice of law and New York courts will apply the law of the state with the more significant contacts). *See also Mazella v. Philadelphia Newspapers,*

*Inc.*, 479 F. Supp. 523 (D.C. N.Y. 1979) (Neaher, J.) (applying New York choice of law principles; considering section 139 and applying Pennsylvania privilege law because the communication was centered in Pennsylvania).

11.      **Pennsylvania:**  *See James Talcott, Inc. v. C.I.T. Corp.,*  14 pa. D & C.3d 204, 206 (Pa. Com. Pl. 1980) (referencing section 139 and applying the accountant-client privilege law of the state with the most significant relationship to the communication).  *See also Samuelson v. Susen*, 576 F.2d 546, 551 (3rd Cir. 1978) (Pennsylvania courts have adopted the "interest analysis" approach to conflict questions and therefore would apply the privilege law of the state with the most significant relationship to the privileged communication – particularly when there was no connection between the communication and the forum).

12.      **Puerto Rico:**  *See Mitsui & Co. (U.S.A.) Inc. v. Puerto Rico Water Resources Authority,* 79 F.R.D. 72 (D.C. Puerto Rico) (Toledo, C.J.) (considering relevant case law and section 139 of the Restatement; concluding that New York law governed the issue of accountant privilege because New York was the state with the most significant relationship to the privileged communication).

13.      **Texas:**  *See Alez v. State*, 45 S.W.3d 101, 103-106 (Tex. Crim. App. 2001) (applying section 139 to privileged communication issue)**.**

14.     **Washington:** *See State v. Donahue,* 18 P.3d 608, 611 (Wash. App.

Div. 2001) (applying section 139 to physician-patient privilege);

15.     **Wisconsin:** *See State v. Kennedy,* 396 N.W.2d 765, 769-770 (Wis.

App. 1986) (relying on section 139 of the Restatement (Second) and

concluding that Wisconsin's physician-patient privilege controlled).

As to the jurisdictions that do not appear to have considered privilege

issues in the choice of law context, research indicates that twenty-three look to the

Second Restatement for guidance when resolving choice of law questions in one or

more other areas of law:

1.  **Alaska:** *See Savage Arms, Inc. v. Western Auto Supply Co.,* 18 P.3d 49,
    53 (Alaska 2001) (generally, Alaska courts look to the Second Restatement
    in resolving choice of law issues).

2.  **Arizona:** *See Bryant v. Silverman,* 703 P.2d 1190, 1191-1192 (generally,
    Arizona has adopted the Second Restatement for choice of law issues).

3.  **Connecticut:** *Jaiguay v. Vasquez,* 948 A.2d 955, 972-973 (Conn. 2008)
    (Connecticut has adopted the significant relationship test of the Second
    Restatement for personal injury actions noting that "[c]hoice of law must
    not be rendered a matter of happenstance, in which the respective interests
    of the parties and the concerned jurisdictions receive only coincidental
    consideration).

4.  **Florida:** *See Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999, 1000-
    1001 (Fla. 1980) (adopting the significant relationship test of Second
    Restatement for personal injury actions and noting that the court would not

apply the law of a state with no connection to the issue). *See also Anas v. Blecker,* 141 F.R.D. 530, 531-533 (M.D. Fla. 1992) (Wilson, J.) (concluding that because Florida courts consistently look to the Second Restatement in resolving conflict issues, Florida courts would also apply section 139 to resolve choice of law issues regarding privilege); *Wolpin v. Philip Morris Inc.,* 189 F.R.D. 418, 424 (C.D. Cal. 1999) (Florida courts would apply section 139 to privilege conflict of law issue) (Paez, J.).

5. **Idaho:** *See Seubert Excavators, Inc. v. Anderson Logging Co*., 889 P.2d 82, 85 (Idaho 1995) ("Although never adopted in full, this Court has opted in favor of applying the most significant relationship test set forth in the [Second Restatement].").

6. **Massachusetts***:* See *Cosme v. Whitin Mach. Works, Inc.,* 632 N.E.2d 832, 834 (Mass. 1994) (in general, choice of law matters are resolved by considering various "choice influencing considerations," including those provided in the Second Restatement).

7. **Michigan:** *See Compuware Corp. v. Moody's Investors Services, Inc.,* 222 F.R.D. 124, 130-131 (E.D. Mich. 2004) (Feikens, J.) (noting that Michigan has adopted the Second Restatement for contract issues and a two-step interest analysis in tort cases then applying both section 139 and Michigan's two-step interest analysis to resolve disputed privilege issues)

8. **Mississippi:** *See McDaniel v. Ritter*, 556 So.2d 303, 310 (Miss. 1989) (Second Restatement applies to torts); *Zurich American Ins. Co. v. Goodwin*, 920 So.2d 427, 433 (Miss. 2006) (Second Restatement applicable to contracts). *See also Barnes v. A Confidential Party*, 628 So.2d 283, 288 (Miss. 1993) (indicating a preference for application of the law of the state where communication took place).

9. **Missouri:** *See Kennedy v. Dixon,* 439 S.W.2d 173, 184-185 (Mo. 1969) (adopting section 145 of the Second Restatement); *Goede v. Aerojet General Corp.,* 143 S.W.3d 14, 25-26 (Mo. App. E.D. 2004) (applying the significant relationship test of the Second Restatement); *Byers v. Auto-*

*Owners Inc. Co.,* 119 S.W.3d 659, 663 (Mo. App. S.D. 2003) (applying sections 188 and 193 of the Second Restatement).

10. **Montana:** *See Phillips v. General Motors Corp.,* 995 P.2d 1002, 1007-1007 (Mont. 2000) (adopting Second Restatement for tort issues); *Tenas v. Progressive Preferred Ins. Co.,* 197 P.3d 990, 994-995 (Mont. 2008) (as to contract issues, Montana courts generally follow the Second Restatement).

11. **Nebraska:** *See Erickson v. U-Haul Intern.,* 767 N.W.2d 765, 772-773 (Neb. 2009) (Nebraska looks to the Second Restatement for guidance when resolving choice of law issues).

12. **New Hampshire:** *See Glowski v. Allstate Ins. Co.,* 589 A.2d 593, 595 (N.H. 1991) (looking to the Second Restatement when "choice influencing considerations" do not provide enough guidance).

13. **New Jersey:** *See P.V. ex rel. T.V. v. Camp Jaycee,* 962 A.2d 453, 455 (N.J. 2008) (applying the most significant relationship standard of the Second Restatement to tort related issue).

14. **Nevada:** *General Motors Corp. v. Dist. Ct.,* 134 P.3d 111, 116 (Nev. 2006) (holding that the "Second Restatement's most significant relationship test governs choice-of-law issues in tort actions unless another, more specific section of the Second Restatement applies to the particular tort").

15. **Oklahoma:** *See Bernal v. Charter County Mut. Ins. Co.,* 209 P.3d 309, 315 (Okla. 2009) (generally lex loci rules are applied in contract actions, however, where motor vehicle insurance contracts are involved, Oklahoma courts will consider whether another state has a more significant interest); *Brickner v. Gooden*, 525 P.2d 632 (Okla. 1974) (adopting the most significant relationship test of the Second Restatement in tort actions).

16. **Oregon:** *See Spirit Partners, LP v. Stoel Rivers LLP,* 157 P.3d 1194, 1200 (Or. App. 2007) (applying the most significant relationship test of the Second Restatement to tort claims); *M+W Zander, U.S. Operations,*

*Inc. v. Scott Co. of California,* 78 P.3d 118, 121 (Or. App. 2003) (applying the Second Restatement to contract claim).

17.     **Rhode Island:**  *See Najarian v. National Amusements, Inc.,* 768 A.2d 1253, 1255 (R.I. 2001) (applying Rhode Island's "interest-weighing" approach in deciding choice of law issue but also looking to Second Restatement for guidance).

18.     **South Dakota:**  *See Burhenn v. Dennis Supply Co.,* 685 N.W.2d 778, 784 (S.D. 2004) (South Dakota applies the significant relationship test of the Second Restatement to resolve choice of law concerns);

19.     **Tennessee:**  *See Hataway v. McKinley,* 830 S.W.2d 53, 59 (Tenn. 1992) (Tennessee will follow the "most significant relationship" approach of the Second Restatement for conflicts questions in tort cases).

20.     **Utah:**  *See Waddoups v. Amalgamated Sugar Co.,* 54 P.3d 1054, 1059 (Utah 2002) (Utah applies the Second Restatement when resolving choice of law issues).  *See also Hercules, Inc. v. Martin Marietta Corp.,* 143 F.R.D. 266, 268-269 (D. Utah 1992) (predicting that Utah would look to section 139 for assessing privilege choice of law issues because Utah has applied the significant contacts analysis of the Second Restatement in other areas of law).

21.     **Vermont:**  *See McKinnon v. F.H. Morgan  Co.,* nc., 750 A.2d 1026, 1028-128 (Vt. 2000) (in Vermont, most significant relationship test of Second Restatement is applied to tort claims); *Pioneer Credit Corp. v. Carden,* 245 A.2d 891, 894 (Vt. 1968) (applying Second Restatement to resolve choice of law issue pertaining to contract).

22.     **West Virginia:**  *See Lee v. Saliga*, 373 S.E.2d 345, 351-352 (W. Va. 1988) (discussing West Virginia's history of applying the Second Restatement to contract matters).

23.     **Wyoming:**  *See R & G Elec., Inc. v. Devon Energy Corp.,* 53 Fed. Appx. 857, 859 (10th Cir. 2002) (Wyoming follows the Second Restatement approach in resolving choice of law questions).

Research indicates that another six jurisdictions apply an interest analysis that reflects principles found in the Second Restatement when addressing other choice of law matters.

1. **Arkansas:**  *See Crisler v. Unum Insurance Co. of America*, 233 S.W.3d 658, 660 (Ark. 2006) (in contract dispute applying the law of the state with the most significant relationship); *Ganey v. Kawasaki Motors Corp., U.S.A.,* 234 S.W.3d 838, 846-847 (Ark. 2006) (choice of law matters in tort are resolved by considering both the doctrine of lex loci delecti and the five "choice-influencing considerations" promulgated by Professor Robert A. Leflar; in rendering its decision the court also considered which state had a more significant relationship to the issue in question).

2. **California:**  *See Wolpin v. Philip Morris Inc.,* 189 F.R.D. 418, 423-424 (D.D. Cal. 1999) (Paez, J.) (applying California's governmental interest analysis to determine which state had the most significant connection with a confidential study; considering factors such as residence of study participants and involvement of California Department of Health Services in collecting data).

3. **Hawaii:**  *See Peters v. Peters*, 634 P.2d 586, 593 (Hawaii 1981) *(*"The preferred analysis, in our opinion, would be an assessment of the interests and policy factors involved with a purpose of arriving at a desirable result in each situation.").

4. **Indiana:**  *See Hubbard MFG. Co., Inc. v. Greeson*, 515 N.E.2d 1071 (Ind. 1987) (in torts Indiana follows a modified version of the "lex loci delicti" rule; if the place of the tort is an insignificant contact the court may consider other factors including the place where the relevant relationship is centered); Hartford Acc.  Indem. Co. v. Dana Corp., 690 N.E.2d 285 (Ind.

Ct. App. 1997) (in contract actions Indiana applies the law of the state with the most significant contacts).

5. **Louisiana:**  *See* Article 3515 of the Louisiana Civil Code codifies a choice of law analysis that considers each states relationship to the parties and the dispute, including consideration of the "policies of upholding the justified expectations of parties").

6. **North Dakota:**  *See Johnson v. Johnson, 617 N.W.2d 97, 123 (N.D. 2000) (applying a significant contacts approach coupled with "choice influencing considerations" to contracts choice of law issues); Nodak Mut. Ins. Co. v. Wamsley, 687 N.W.2d 226, 231 (N.D. 2004) (applying Second Restatement to choice of law issues in tort).*

Finally, the Court's research reveals eight states who continue to follow the traditional choice of law principles largely reflected in the original Restatement (First) of Conflict of Laws (1934) ("First Restatement").

1. **Alabama:**  *See Lifestar Response of Alabama, Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009) (Alabama generally follows conflict of law principles of *lex loci contractus* and *lex loci delicti*).

2. **Georgia:**  *See Convergys Corp. v. Keener*, 582 S.E.2d 84 (Ga. 2003) (declining to adopt the Second Restatement and continuing to apply a more traditional approach).

3. **Kansas:**  *See Aselco, Inc. v. Hartford Ins. Group*, 21 P.3d 1011, *rev. denied* 272 Kan. --- (2001) (applying traditional choice of law analysis).

4. **Maryland:**  *See Hauch v. Connor, 453 A.2d 1207, 1209 (Md. 1983) (declining to adopt the Second Restatement for tort choice of law matters); American Motorists Ins. Co. v. Artra Group, Inc.*, 659 A.2d 1295, 1301 (Md. 1995) (Maryland has not adopted the significant relationship test of the Second Restatement but has cited with approval other provisions of the

Second Restatement).  The United States District Court for the District of Maryland has, on two occasions, concluded that, as to matters of privilege, Maryland courts would apply section 139 of the Second Restatement).  *See Saint Annes Development Co., LLC v. Trabich*, 2009 WL 324054, *2 (D. Md. Feb. 9, 2009) (Bredar, Mag.); *Hill v. Huddleston*, 263 F. Supp. 108 (D. Md. 1967) (Thomsen, C.J.).

5. **New Mexico:**  *United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 775 P.2d 233, 235 (1987)(noting "New Mexico adheres to a traditional conflicts of law analysis contained in Restatement (First) of Conflicts of Law (1934)").  *But c.f. Ideal v. Burlington Resources Oil & Gas Co. LP*, 233 P.3d 362, 369 (N.M. 2010) (noting that the New Mexico Supreme Court recently rejected the First Restatement approach as too rigid and inflexible in multi-state contract class actions; adopting instead the "more appropriate" Second Restatement approach).

6. **North Carolina:**  *See Gbye v. Gbye*, 503 S.E.2d 434, 435-436 (N.C. 1998) (North Carolina adheres to a traditional choice of law approach in tort actions); *Computer Sales Intern., Inc. v. Forsyth Memorial Hosp., Inc.*, 436 S.E.2d 263, 265 (N.C. App. 1993) (law of the place where the contract is made governs its interpretation)

7. **South Carolina:**  *See Menezes v. WL Ross  Co. LLC*, --S.E.2d --, 2011 WL 1118841, 3 (S.C. App. 2011 March 23, 2011)

8. **Virginia:**  *See Jones v. R.S. Jones & Assocs.*, 431 S.E.2d 33, 34 (Va. 1993) ("Virginia applies the doctrine of lex loci delicti, meaning the law of the place of the wrong governs all matters related to the basis of the right of action."); *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993) (under Virginia "conflict of law rules: (1) the law of the place of the wrong determines the substantive issues of tort liability,  and (2) generally, the law of the place where an insurance contract is written and delivered controls issues as to its coverage.") (internal citations omitted).

## IV.    CONCLUSION AND SUMMARY OF FINDINGS

Having considered the parties' arguments, the relevant authority, and for the reasons stated herein, the Court **ORDERS** as follows:

1. Federal law will govern whether documents are protected under the work-product doctrine.

2. The confidentiality of communications that are relevant to an element of a federal defense will be governed by federal attorney-client privilege law.

3. The confidentiality of communications relevant to an element of a claim or defense for which state law supplies the rule of decision will be governed by state privilege law.

4. The confidentiality of communications relevant to both federal and state elements will be governed by the law favoring reception of the evidence.

5. Choice of law considerations for matters governed by state privilege law

   a. Section 139 of the Second Restatement will govern the choice of law decision for matters governed by state privilege law.

   b. As the Court interprets section 139 of the Second Restatement, vindication of the parties' reasonable expectations of confidentiality is a "special circumstance" warranting application of the law of the state with the most significant relationship to the communication.  Thus, where the communications at issue are between individuals foreign to the forum, whose relationship is centered outside of the forum, and whose communications regard subject matter not centered in the forum, the forum's privilege law is not controlling.

6. The parties are directed to meet and confer as specified in section V below.

## V.    MEET AND CONFER PROCESS

In light of the Court's decision resolving the choice of law considerations, the Court directs the parties to meet and confer, for a period not to exceed seven days, with respect to the confidentiality of the 330 disputed documents.  The parties should attempt to independently reach an agreement regarding the 330 disputed documents by applying the principles discussed in this order.  If the parties are unable to resolve this matter independently, the parties shall submit briefing relevant to any remaining disputes over the 330 disputed documents.  The briefing shall include:  (1) a list of documents as to which disputes remain over claims of attorney-client privilege and work-product; (2) position statements addressing the disputes which remain over claims of attorney-client privilege and work-product; and (3) defendants' privilege logs.

**SO ORDERED:**

Digitally signed by
David R. Herndon
Date: 2011.04.11
17:10:20 -05'00'

**Chief Judge**
**United States District Court**                    **DATE:  April 11, 2011**