**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION ) ) ) ) ) | 3:09-md-02100-DRH-PMF<br><br>MDL No. 2100 |

**This Document Relates to:**

**ALL CASES**

# ORDER REGARDING
# *IN CAMERA* REVIEW OF DISPUTED DOCUMENTS

## I. Introduction

This matter is before the Court for the purpose of addressing the plaintiffs' challenge to Bayer's decision to withhold 330 documents from production based on the attorney-client privilege and/or the work-product doctrine. The Court has reviewed the parties' briefings and has completed an *in camera* review of the disputed documents. As is explained below, with one potential exception, the Court **upholds** Bayer's assertion of attorney-client privilege and work-product protection in every instance. *See* § VI (conclusions of the court) and § VII (summary of findings), below.

## II. Background

To date, Bayer has produced just over 3.5 million documents (over 70 million pages) (Bayer's Brief, Doc. 1738 p.1 n.1). Bayer has withheld 16,791 unique documents (23,979 documents counting duplicates) as shielded by attorney-client privilege. *Id.* Of those unique documents, Bayer asserts that 8,560 are also protected under the work-product doctrine. *Id.* On November 23, 2010, the Plaintiffs' Steering Committee ("PSC") notified Bayer that it intended to challenge Bayer's designation and withholding as "privileged" of 330[1] documents listed on Bayer's privilege log. *Id.* at p. 1; March 14, 2011 PSC letter brief to Court p. 2.[2]

The parties attempted to independently resolve the challenges but could not reach an agreement regarding what law governed Bayer's work-product and attorney-client privilege claims. The parties presented the choice-of-law issue to the Court in March 2011. On April 12, 2011 the Court issued its ruling on the choice-of-law principles to be applied to the privilege claims (Doc. 1660). In

---

[1] In its March 22, 2011 letter brief to the court, Bayer indicated that the challenge as to the 330 documents affected 243 unique documents (doc. 1738 Exhibit A p. 2). Subsequently, Bayer determined that 94 of the 330 challenged documents were duplicates, indicating a total of 236 unique documents (Doc. 1738 p. 2).

[2] The PSC indicates that its challenge with regard to these 330 documents is a partial challenge. *See* March 14, 2011 PSC letter brief to Court p. 2 (stating that the PSC "selected a limited set of documents for a partial challenge in the hope that resolution of privilege claims in the context of these 330 documents would aid the parties in addressing the status of the remaining 18,000 or so entries in Bayer's privilege log").

addition, the Court directed the parties to consider the Court's choice-of-law ruling and to re-review the challenged documents in light of that ruling. *Id.*

After numerous meet and confers, the number of disputed documents was reduced from 330 to 233, 158 of which are unique and 75 of which are duplicates (Bayer's Brief, Doc. 1738 p. 2). On May 23, 2011, the parties submitted the 158 unique (233 total) documents to the Court for an *in camera* review. That same day, the parties submitted simultaneous briefs addressing the relevant issues (Plaintiffs' Brief, Doc. 1738; Bayer's Brief, Doc. 1740). Responsive briefing was submitted by both parties on June 3, 2011 (Plaintiffs' Response, Doc. 1761; Bayer's Response, Doc. 1762).

### III. Governing Law

The parties agree that, in light of the Court's April 12th Order addressing choice of law, New Jersey law governs the existence and scope of attorney client privilege.[3]  As the Court explained in its April 12th Order, federal law governs with respect to questions of work-product protection (Doc. 1660 p. 3).  Accordingly, with respect to attorney-client privilege the Court is guided by New Jersey law and with respect to work-product the Court is guided by federal law.

---

[3] Under the Court's choice-of-law ruling, the law of the forum with the most significant relationship to the communication will govern the existence and scope of the attorney-client privilege (Doc. 1660 pp. 21-22).  Bayer states that in "situations where the location of the client cannot answer the choice-of-law question (because the communication involves individuals from the U.S. and overseas), the choice-of-law analysis should turn on what forum is most connected to the substance of the communication." (Bayer's Brief, Doc. 1738 p. 8).  As an example, Bayer states that "communications with persons at Bayer Schering Pharma AG ("BSP AG," which is located in Germany) and Bayer Healthcare Pharmaceuticals ("BHCP") relating to FDS submissions are centered in New Jersey because they are most significantly related to the United States in general, and the operations of BHCP in New Jersey in particular." *Id.*  Plaintiffs agree that New Jersey law governs Bayer's claims of attorney-client. (Plaintiffs' Brief, Doc. 1740 pp. 4 & 6).  Bayer contends that foreign law applies to a small subset of documents, but that New Jersey law and the applicable foreign law are not in conflict (Bayer's Response, Doc. 1762 p. 2).  Therefore, the Court is guided by New Jersey law in reviewing Bayer's attorney-client privilege claims.

# IV. PARTIES' ARGUMENTS[4]

## A. Attorney-Client Privilege, Content-Based Arguments

In their initial brief, Bayer divides the disputed communications into five categories: (1) Communications Between Counsel and Corporate Employees Seeking or Relaying Legal Advice; (2) Requests from Counsel for Information and Responses thereto for the Purpose of Providing Legal Advice; (3) Communications Disseminating Legal Advice within the Corporate Structure; (4) Communications with Third-Party Agents and Consultants Assisting Attorneys in Providing a Legal Response; and (5) Draft Documents Conveying Legal Advice. Bayer contends that each of these categories is protected from disclosure under the attorney-client privilege (Bayer's Brief, Doc. 1738 pp. 9-19).

Plaintiffs do not necessarily disagree that these categories of communications may be protected under the attorney-client privilege. In fact, in many instances, the plaintiffs acknowledge that the disputed documents may be protected from disclosure under the attorney client privilege. The central argument in the plaintiffs' briefing is that Bayer's attorney-client claims are premised on the *content* of the communications, and that *in camera* review is

---

[4] For purposes of brevity, the Court will not expressly address each contention raised in the parties' briefs. The primary purpose of the Court's discussion is to aid the parties in resolving any future disputes over Bayer's claims of attorney-client privilege or work-product protection. In addition, the Court notes, to the extent plaintiffs contend that Bayer's privilege logs are inadequate, the Court disagrees. The privilege logs meet the requirements of Federal Rule of Civil Procedure 26(b)(5).

therefore necessary to determine whether the documents are in fact protected from disclosure (Plaintiffs' Brief, Doc. 1740 pp. 2-4).

For example, while plaintiffs acknowledge that communications conveying legal advice are subject to the attorney-client privilege, they question whether 88 of the disputed communications could *really* fall into this category (and/or additional protected categories of communications) when they do not involve a lawyer, meaning that (1) a lawyer is not copied or included on the communication at all or (2) a lawyer is not the sender or primary recipient of the communication (*See e.g.,* Plaintiffs' Brief, Doc. 1740 pp. 3-4; *id.* at p. 10 (questioning whether an email between Bayer employees that did not involve an attorney really conveys legal advice as asserted by Bayer). Similar content related questions are raised with regard to the other categories of allegedly protected documents.

**B.     Subject Matter of Communication**

Plaintiffs also argue that the subject matter of certain communications (such as documents related to marketing) implies that the communication is less likely to be privileged (Plaintiffs' Brief, Doc. 1740 p. 23). The rationale for this contention is that communications relating to certain subject matters are likely designed to address business rather than legal issues and are therefore not privileged.

## C. Standards Applicable to Draft Documents

As to the fifth category of documents, draft documents conveying an attorney's legal advice, the parties seem to agree that (1) draft documents may be protected by the attorney-client privilege (and the work-product doctrine); (2) draft documents are not privileged simply because a lawyer received the draft; and (3) even after public disclosure of a final version of a document, its prior drafts are privileged if they reveal confidential communications between the attorney and client for the purpose of obtaining legal advice (Bayer's Response, Doc. 1762 p. 5; Plaintiffs' Brief, Doc. 1740 pp.3,12-13; Bayer's Brief, Doc. 1738 pp. 15-18).

The parties disagree with regard to whether draft communications that Bayer *intended* to send to third-person regulatory agencies (such as the FDA) are privileged. An additional point of contention relates to whether draft documents should be produced to the extent any portion of the draft was later included in a publicly-released final draft of the document (Bayer's Response, Doc. 1762 p. 5).

## V. Governing Legal Principles

For the assistance of the parties, the Court summarizes the pertinent legal principles pertaining to Bayer's claims of attorney-client privilege and work-product protection.

### A. Attorney-Client Privilege

The Court agrees with Bayer's contention that, under New Jersey law, the following categories of communications are subject to protection under the attorney-client privilege:

(1) Communications between counsel and corporate employees seeking or relaying legal advice;

(2) Requests from counsel for information and responses thereto for the purpose of providing legal advice;

(3) Communications disseminating legal advice within the corporate structure;

(4) Communications with third party agents and consultants assisting attorneys in providing a legal response; and

(5) Draft documents conveying an attorney's legal advice[5]

The first category, communications between counsel and corporate employees seeking or relaying legal advice, clearly involves communications made within the context of the attorney client relationship. *See Payton v. New Jersey Turnpike Auth.,* 691 A.2d 321, 334 (N.J. 1997) (If the purpose of the

---

[5] Unless, as the Court explains below, the draft was adopted as written and given to third-persons.

communication is to aid the attorney in giving legal advice to his client or to prepare for litigation, then the privilege applies); *McGovern v. Rutgers*, 14 A.3d 75, 84 (N.J. Super. Ct. App. Div. 2011) (communication involving University's Board of Governors and University counsel for the purpose of rendering legal advice on pending litigation and the manner in which a contract had been procured deemed privileged); *National Utility Service, Inc. v. Sunshine Biscuits, Inc.*, 694 A.2d 319, 322 (N.J. Super. Ct. App. Div. 1997) (where documents are prepared as part and in furtherance of the duties of in-house counsel, who was retained to provide professional legal advice to a corporation, the documents are subject to the attorney-client privilege); *United Jersey Bank v. Wolosoff*, 483 A.2d 821, 825-826 (N.J. Super Ct. App. Div 1984) (Because a corporation must act through its agents, communications between an attorney (either outside counsel or in-house counsel) and the corporation's employees (including low-level employees), are protected if made within the context of the attorney-client relationship).

The same is true with regard to the second category, requests from counsel for information and responses thereto for the purpose of providing legal advice. *See Macey v. Rollins Env.Serv.,* 432 A.2d 960, 963-964 (N.J. Super. Ct. App. Div. 1981) (holding that statements prepared by corporate agent at the behest of the corporation's general counsel were protected by the attorney-client privilege); *Hanna v. St. Joseph's Hosp. & Medical Center*, 722 A.2d 971, (N.J. Super. Ct. App. Div. 1999) (chronology of events which lawyer requested from his

client to facilitate representation was privileged). *See also Rivard v. American Home Products, Inc.*, 917 A.2d 286, 300 (N.J. Super. App. Div. 2007) ("The attorney-client privilege is not restricted to legal advice, though the privilege is limited to those situations in which lawful legal advice is the object of the relationship.") (internal citation omitted).

Further, such communications are privileged regardless of whether an attorney appears as an author or recipient of the final email chain. This is because the communications occurred at the request of counsel for the purpose of assisting counsel in providing legal advice. *See, e.g., Macey*, 432 A.2d at 963-964. Similarly, dissemination of a privileged communication within the corporate structure (including dissemination by non-attorneys) does not diminish or negate the communication's privileged status. Such communications remain privileged, provided that the communication was sent "for the purpose of circulating legal advice 'to those within the corporate structure who needed the advice in order to fulfill their corporate responsibilities,' or to 'inform those recipients of the nature of the legal advice being sought[.]'" *Rowe*, 2008 WL 4514092 at *11 (applying New Jersey law) (*quoting In re Vioxx Prod. Liab. Litig.,* 501 F. Supp. 2d 789, 811-12 (E.D. La. 2007). Thus, the third category of documents, communications disseminating legal advice within the corporate structure, is subject to the attorney-client privilege.

As to the fourth category of documents, communications with third-party agents and consultants assisting attorneys in providing a legal response, the

inclusion of necessary third-party agents or intermediaries to assist in the rendering of legal advice does not negate the privilege. *See Stewart Equipment Co. v. Gallo*, 107 A.2d 527, 527-528 (N.J. Super. Ct. Law Div. 1954). Thus, such documents are also protected from disclosure.

As to the fifth category of documents, draft documents conveying an attorney's legal advice, the Court agrees that (1) draft documents may be protected by the attorney-client privilege (and the work-product doctrine); (2) draft documents are not privileged simply because a lawyer received the draft; and (3) even after public disclosure of a final version of a document, its prior drafts are privileged if they reveal confidential communications between the attorney and client for the purpose of obtaining legal advice.

New Jersey courts have not yet addressed the privileged status of draft documents that are meant to be published. Therefore, the Court must attempt to predict how the Supreme Court of New Jersey would decide the issue. *See e.g., McKenna v. Ortho Pharma. Corp.,* 622 F.2d 657, 661 (3rd Cir. 1980). New Jersey courts are generally in accord with federal privilege law on issues related to attorney-client privilege, and consistently cite to and seek guidance from federal privilege law. *See Leonen v. Johns-Mansville*, 135 F.R.D. 94, 98 (D.N.J. 1990)(Wolfson, M.J.). Thus, the Court considers federal privilege law in resolving this matter.

There is disagreement amongst federal courts with regard to the privileged status of draft documents that are to be published. *See* Kenneth S. Broun, 1 *McCormick on Evid.* § 91 (6th ed. 2006). Some courts have concluded that such drafts are not protected based on the intent of the client to eventually publish the information contained in the draft. *See Id.* Other courts have concluded that these documents are privileged so long as they were not actually sent to third-persons. *Id.* The Court believes, if presented with the issue, the New Jersey Supreme Court would conclude, to further the goal of the attorney-client privilege, such documents are necessarily protected from disclosure. *See Id.*:

> If the goal of the attorney-client privilege is to encourage a free flow of communications between attorney and client, preliminary conversations and drafts reflecting those conversations ought to be protected. The client and her attorney ought to be able to discuss the precise terms of the disclosure, including drafting wording reflecting the best way to communicate the information, without the risk that matters ultimately determined not to be disclosed would be unprivileged.

Further, the Court will not require the production of a draft document (or a redacted draft document) simply because a *portion* of the draft was later included in a publicly-released final draft. The Court agrees with Bayer; doing so would effectively reveal the attorney's legal advice. If, however, a draft document was adopted *as written* and published to third persons, the document loses its confidentiality, and is no longer protected from disclosure under the attorney-client privilege. Thus, draft documents that were adopted as written and published are not subject to the attorney-client privilege and must be produced.

The Court has identified thirteen unique documents that *may* be subject to production under this principle (*See* § VII.D., below).

Two final points warrant discussion. First, where there is an issue as to whether a communication involves a legal or business purpose, the Court agrees that the communication is privileged if it is designed to meet problems which can fairly be characterized as "predominately legal." *Leonen*, 135 F.R.D. at 98-99; *Rowe v. E.I. DuPont de Nemours & Co.*, Civil Nos. 06-1810-RMB-AMD, 06-3080-RMB-AMD, 2008 WL 4514092, at *8 n.11 (D.N.J. Sept. 30, 2008)(Donio, M.J.) (applying New Jersey law). Similarly, the fact that non-lawyers are copied on a communication does not negate or minimize its privileged status provided the primary purpose and content of the communication is legal in nature. *Id.* at *11 (applying New Jersey law).

Second, the Court agrees that the subject matter of a communication does not negate or diminish its privileged status. The key question is whether the communication involves the attorney acting within his or her professional capacity. Moreover, as noted by Bayer, legal advice is often necessary to ensure compliance with statutory and regulatory requirements applicable to the marketing of prescription drugs (Bayer's Response, Doc. 1762, p. 7). This type of legal advice is no different than the legal advice that the New Jersey Appellate Court concluded was privileged in *In re Grand Jury Subpoenas Duces Tecum Served by Sussex County*, 574 A.2d 449 (N.J. Super. Ct. App. Div. 1989). *See Id.* (considering issue of waiver and implicitly recognizing that counsel's provision

of legal advice in connection with assuring that client is in compliance with current laws and regulations was privileged).[6]

**B.     Work-Product Doctrine**

The work-product doctrine, of course, protects the thought processes, mental impressions, and opinions of attorneys. *Hickman v. Taylor*, 329 U.S. 495 (1947). Later codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, the work product doctrine protects otherwise discoverable documents if, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118-19 (7th Cir.1983) (quoting 8 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2024).

**VI.     Conclusions**

Applying these principles to the disputed documents, the Court finds that all of communications are protected from disclosure by the attorney-client privilege and/or the work-product doctrine. The Court did not find a single instance where Bayer misrepresented the content of or circumstances relating to the disputed communications. As to the documents protected from disclosure by the attorney-client privilege, each involved the provision of legal advice or was

---

[6] The Court is aware that this holding involved a public body and not a corporation. Nonetheless, the Court is satisfied that the same principle is applicable in the corporate context.

designed to meet problems which can fairly be characterized as "predominantly legal." Communications protected from disclosure under the work-product doctrine reflected counsel's preparation in anticipation of litigation. In all cases, *in camera* review of the communications and Bayer's supporting declarations demonstrated that the communications were protected under the attorney-client privilege and/or the work-product doctrine regardless of the inclusion of third-parties, the inclusion of an attorney in the communication, and the subject matter of the communication.

For example, plaintiffs questioned whether the content of BHCP Privilege Log Number 41, a communication amongst non-lawyer Bayer employees, was in fact privileged (Plaintiffs' Brief, Doc. 1740 p. 10). Upon review, the Court found that the communication relays a request for information from outside counsel that was necessary for the rendering of legal advice and is thus clearly protected from disclosure under the attorney-client privilege. Similar concerns were raised with regard to BHCP Privilege Log Numbers 2052 and 2142, based on the fact that both communications were transmitted by third-party agents. *Id*. *In camera* review demonstrates that both communications involve necessary third-party agents assisting in the provision of legal advice and are clearly privileged.

The only circumstance that may require disclosure of certain disputed communications relates to draft documents. As noted, with regard to certain identified draft documents, the Court finds that if the draft was adopted as

written and provided to third-persons, then the draft loses its confidentiality, and must be produced.

Thus**, the Court directs Bayer, within 14 days of the entry of this Order, to identify and produce any such documents to the plaintiffs**.

### VII. Summary of Findings

A. All of the disputed documents (with the exception of those communications listed in § II, below as being protected under the work-product doctrine only) are protected by the attorney-client privilege.

B. The following documents are protected under the work-product doctrine only:

- BHCP Privilege Log Numbers 3192, 3288, 4118, 4145, 4201, 4492, 4515, 4539, 4559, 4565, 4576, 6002

- BSP AG Privilege Log Numbers 828, 1524, 1532, 1864

C. The following documents are protected under both the attorney-client privilege and the work-product doctrine:

- BHCP Privilege Log Numbers 27, 36, 45, 61, 156, 163, 322 (and duplicate BHCP Privilege Log Number 4478), 368, 382, 395, 399 (and duplicate BHCP Privilege Log Numbers 1055, 1220, 4473), 547, 1042, 2825, 2826, 3078 (and duplicate BHCP Privilege Log Number 5529), 3286, 4307, 4308, 4414, 4521, 4651, 4666, 4768, 4853, and 5445

- BSP AG Privilege Log Number 402

D. The following documents are subject to the attorney-client privilege, <u>unless the draft communication was adopted as written and sent to third persons, thereby eliminating the confidence</u>:

- BHCP Privilege Log Number 44

- BHCP Privilege Log Number 73 (and duplicate BHCP Privilege Log Numbers 80, 86, 108, 6049, 6144)

- BHCP Privilege Log Number 74 (and duplicate BHCP Privilege Log Numbers 81, 87, 109, 6050, 6145, and BSP AG Privilege Log Numbers 163 and 177)

- BHCP Privilege Log Number 78 (and duplicate BHCP Privilege Log Numbers 1810, 6054, and 6136, and BSP AG Privilege Log Number 419)

- BHCP Privilege Log Number 2139 (and duplicate BHCP Privilege Log Number 3009)

- BHCP Privilege Log Number 2354 (and duplicate BHCP Privilege Log Numbers 5218, 5305, 5317, and 5331)

- BHCP Privilege Log Number 5764 (and duplicate BHCP Privilege Log Numbers 5765 and 5823)

- BHCP Privilege Log Number 3085 (and duplicate BHCP Privilege Log Number 5484)

- BHCP Privilege Log Number 3086 (and duplicate BHCP Privilege Log Number 5485)

- BHCP Privilege Log Number 5990 (and duplicate BHCP Privilege Log Number 6191)

- BHCP Privilege Log Number 6123 (and duplicate BHCP Privilege Log Number 6192 and BSP AG Privilege Log Numbers 189 and 762)

- BHCP Privilege Log Number 6140

- BSP AG Privilege Log Number 480

So Ordered.

Digitally signed by David R. Herndon
Date: 2011.06.17 13:07:58 -05'00'

**Honorable David R. Herndon**
**Chief Judge, United States District Court**          Dated:  June 17, 2011