UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

------------------------------------------------------------ X

IN RE YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

3:09-md-02100-DRH-PMF

MDL No. 2100

------------------------------------------------------------

**This Document Relates to:**

**All Cases**

Judge David R. Herndon

**ORDER**

## ORDER REGARDING NON-BELLWETHER CASE-SPECIFIC DISCOVERY

**HERNDON, Chief Judge:**

### INTRODUCTION

In October 2010, the Court implemented its bellwether trial program, a case management order that governs the selection of plaintiffs for discovery and bellwether trials(MDL 2100 Doc. 1329). At that time, "there [were] well in excess of 3700 filed cases" in this MDL, with the number growing "by leaps and bounds every month."*Id*. p. 2.Initially, the Court decided the pool of cases, with which core discovery would be pursued and from which the bellwether trials would be drawn, would consist of fifty (50) cases. *Id*. p. 6. Subsequently, in light of concerns raised by the plaintiffs' leadership counsel, liaison counsel and steering committee (the "PSC") about the number of cases selected, the Court reduced the core discovery and bellwether trial selection pool to twenty-four (24) cases. *Id*.

Thus, to date, the defendants have been able to explore core, case-specific discovery in twenty-four (24) cases.

Presently before the Court, is the defendants' request to expand pretrial discovery beyond the group of bellwether cases selected for core discovery. Bayer proposes proceeding with core, case-specific deposition discovery, specifically depositions of the plaintiffs and their treating physicians, in the oldest 100 non-bellwether cases.Bayer contends that this group of cases includes actions brought by several of the law firms with substantial inventories of cases in this MDL. Accordingly, Bayer contends, this group of cases can be expected to present common issues and problems the parties will confront in the rest of the inventory. The PSC contends that the sampling method suggested by Bayer will not provide a representative sampling of the MDL as a whole. Plaintiffs, however, are also opposed to randomized selection and have not come forward with an alternative sampling proposal.

For the reasons discussed below, the Court concludes it will allow core, case-specific discovery in the oldest 100 non-bellwether cases. The Court will allow the taking of individual case-specific plaintiff depositions in these cases. It will not, however, allow counsel to take the depositions of treating physicians at this time.

## II.     COUNSEL'S ARGUMENTS

Noting that since the Court implemented its bellwether selection program this MDL has ballooned to nearly 6,350 active, served cases,[1] Bayer argues that expanded, case-specific discovery is warranted for several reasons, all of which relate to the benefits of gathering accurate representative information.Bayer asserts that expanding core discovery will provide a broader sampling of the case inventory which will allow the parties to more accurately assess the litigation.  In addition, Bayer contends that an expanded discovery pool will provide valuable additional information that will allow the Court and the parties to formulate beneficial case management tools.

Bayer further argues that a case-specific discovery program will foster a more balanced approach to discovery.  Bayer notes, in non-bellwether cases, discovery for the defendants has been limited to information provided by the Plaintiff Fact Sheet ("PFS") submissions and the medical records secured throughauthorizations that accompany the PFS submissions.  Plaintiffs, on the other hand, have had the benefit of conducting full discovery with regard to the defendants and may conduct any investigation they choose into their own cases. Indeed, plaintiffs have deposed more than sixty (60) Bayer witnesses and are seeking the depositions of an additional sixteen (16) Bayer witnesses.

---

[1]  The PSC contends that the increase in docket size is irrelevant because the Court and the parties were aware of the growing docket when it established its bellwether selection program.

The PSC contends that an expanded discovery program is an unnecessary distraction; meaningless busy work that will interfere with the PSC's ability to adequately prepare the initial bellwether cases for trial. The PSC takes particular umbrage with the argument that defendants cannot obtain sufficient information utilizing the tools already available to them – PFS submissions and medical record authorizations. With effective use of these discovery tools, the PSC argues, defendants can obtain the information necessary to accurately evaluate and resolve this litigation.

Defendants strongly disagree; noting that in bellwether cases core, case-specific discovery (such as taking the depositions of plaintiffs and treating physicians) has revealed that the PFS submissions are often inaccurate and/or incomplete. For example, Bayer states that in more than one-third of the cases selected by the parties as potential bellwethers, the PFS submissions had to be amended or supplemented just before, or during, the deposition process because they were incomplete or inaccurate. In one case, the revisions were reportedly so extensive as to involve, identification of additional treating physicians, changes in dates of treatment and hospital admissions, identification of additional pharmacies, identification of additional medical conditions and medications, and new information regarding the use of oral contraceptives. In another case, the plaintiff allegedly misidentified the prescriber of her YAZ prescription on the PFS and failed to identify the pharmacy at which her YAZ prescriptions were filled.

Defendants contend that if these bellwether cases had not proceeded to more fulsome discovery, the PFS inaccuracies would have remained undetected. This experience, leads Bayer to question the value of the information it has gathered via the PFS submissions (and medical record authorizations which are based on information provided in the PFS submissions) in the non-bellwether cases. Because Bayer lacks confidence in the PFS submissions, Bayer contends the proposed expanded discovery in non-bellwether cases is necessary if the Court and the parties are to conduct a meaningful analysis of this litigation.[2]

### III.  ANALYSIS

The dual purpose of multidistrict litigation is the promotion of just and efficient resolution of mass tort litigation. 28 U.S.C. § 1407(a). The discovery devices currently available to the parties were adopted by the Court in an effort to meet these goals. The Court hoped that the PFS submissions and the accompanying medical authorizations would allow the parties to conduct a

---

[2]As an example, Bayer points to the Baycol multidistrict litigation. In the Baycol MDL, a similar case-specific discovery program was implemented. Bayer contends that this program provided vital information that promoted efficiency and allowed the litigation to resolve sooner, rather than later. In particular, Bayer notes that the Baycol discovery program allowed cases involving the "signature injury" to be resolved through settlement. The remaining cases were either dismissed voluntarily (as plaintiffs discovered deficiencies in their own cases), or involuntarily (based on the inadequacy of support for the claims asserted).

meaningful evaluation of the litigation without expending a tremendous amount of resources during the discovery process. The Court expected that this process would help to shape the parties expectations and would promote a just and efficient resolution of this litigation.

Inaccurate and/or incomplete PFS submissions, however, interfere with the current discovery process reaching its full potential. The Court cannot achieve its goals if either side feels that information gathered during the discovery process lacks credibility. If credibility is lacking, the information will be of no use for assessing whether claims should proceed to trial, settlement, or dismissal. In other words, without accurate information a meaningful evaluation of the litigation cannot occur and the entire process will have been a waste of everyone's time and resources.

The PFS deficiencies identified by the defendants raise questions about the credibility of the information that has been obtained. Considering these deficiencies in conjunction with the parties arguments and the critical importance of obtaining accurate information during the discovery process, the Court will allow an expanded core, case-specific discovery program in the oldest 100 non-bellwether cases. In particular, the Court will allow case-specific depositions of the plaintiffs in these individual cases. It will not, however, allow depositions of the plaintiffs' treating physicians.

In issuing this Order, the Court emphasizes that the depositions of these plaintiffs will be case-specific, non-bellwether, depositions.  As such, the responsibility for handling these depositions will fall on the individual plaintiff's counsel and not on the PSC.  The provisions of Case Management Order Number 14 ("CMO 14") (and the accompanying common benefit agreement) clearly demonstrate that the PSC is not responsible for handling a plaintiff's case-specific deposition.   For example, pursuant to CMO 14 and the attached common benefit agreement, the PSC is only entitled to reimbursement for expenses incurred "for the common benefit."[3]

With regard to depositions, CMO 14 expressly provides that common benefit costs include expenses associated with "non-case-specific depositions" (Doc. 1042 p. 8)(emphasis added).*See also Id*. at p. 12 (defining compensable common benefit work and citing "the preparation for and taking of authorized

---

[3]*See e.g.,* **CMO 14 Section III "Common Benefit Expenses" Subpart (B) "Shared and Held Common Benefit Expenses" Subpart (1) Shared Costs"** (the PSC is entitled to reimbursement for shared costs, defined as "costs incurred for the common benefit"); **CMO 14 Section IV "Common Benefit Work" Subpart (A), "Qualified Common Benefit Work Eligible for Reimbursement"** ("Only Participating Counsel are eligible for reimbursement for time and efforts expended for the common benefit.  Participating counsel shall be eligible for reimbursement for time and efforts expended for common benefit work, if said time and efforts are (a) for the common benefit…."); **CMO 14 Exhibit A Section III "Common Benefit Expenses" Subpart (A)"Qualified Expenses Eligible for Reimbursement"** ("In order to be eligible for reimbursement of common benefit expenses, said expenses must meet the requirements of this section.  Specifically, said expenses must be (a) for the common benefit…"); **CMO 14 Exhibit A Section IV "Common Benefit Work" Subpart (A)"Qualified Common Benefit Work Eligible for Reimbursement"** ("In order to be eligible for reimbursement for time and efforts expended for common benefit work, said time and efforts must be (a) for the common benefit…").

depositions of Defendants and third-party witnesses, and expert depositions in state or federal court" as an example of common benefit work).  There is no indication that case-specific plaintiff depositions constitute reimbursable common benefit work. Therefore, the Court concludes that this work must be handled by each individual plaintiff's attorney with no expectation of compensation from the common benefit fund.

### IV.    CONCLUSION

Because each individual plaintiff's counsel will be responsible for handling that plaintiff's case-specific deposition, allowing defendants to proceed with case-specific depositions of plaintiffs will not unduly burden the PSC or interfere with its ability to adequately prepare the initial bellwether cases for trial. In addition, expanding core discovery in this manner will provide the parties with vital information, restore confidence in the discovery process, and may ultimately serve as a catalyst for the just and efficient resolution of this litigation. Accordingly, the Court will allow for expanded core, case-specific discovery in the oldest 100 non-bellwether cases.  This discovery will include taking case-specific depositions of plaintiffs but will not include taking depositions of those plaintiffs' treating physicians.

**SO ORDERED:**

David R. Herndon
2011.07.22 18:38:29 -05'00'

**Chief Judge**
**United States District Court**                                            Date:  July 22, 2011