UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

---------------------------------------------------------- x

IN RE YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND RELEVANT PRODUCTS LIABILITY LITIGATION

3:09-md-02100-DRH-PMF

MDL No. 2100

----------------------------------------------------------

This document relates to:

All Cases

Judge

David R. Herndon

ORDER

## CASE MANAGEMENT ORDER NUMBER 54
Status of Bellwether Proceedings and Related Matters

The parties and the Court began discussing the benefits of establishing a bellwether plan during the initial monthly status conferences. After careful consideration, the Court concluded that this litigation would benefit from the establishment of bellwether trials and entered Amended Case Management Order Number 24, the Bellwether Trial Selection Plan (Doc. 1329). The Court hoped that bellwether verdicts would help to shape the parties' expectations and aid in the valuation of cases, thereby furthering the goal of facilitating settlement. Clearly, a plaintiff who is not satisfied with all settlement offers that come her way in any litigation has the option to reject all such offers, including the last one, and

proceed to a trial that results in a verdict rendered by a jury or a judge. However, a strategy that contemplates trying thousands, even hundreds or dozens of cases, of this nature is a disingenuous tactic for both sides given the expense on each side of the issue. The MDL transferee judge is not in the business of trying cases outside the realm of bellwether trials, except to the extent he is designated to try cases in the home districts of cases upon remand on the theory that he has acquired a certain knowledge base that places him in a superior position compared with the transferor judge. The volume of cases in this litigation will prevent that kind of extraordinary service. Though not required of the MDL transferee judge, many feel compelled to try to resolve as many as possible to avoid having to remand as many cases as possible to the transferee courts.

The underlying rationale of ordering bellwether trials was that such trials would provide the parties with a representation of the value of the mill run case in this litigation. Since there are a variety of alleged injuries involved in this court action, a number of bellwether trials were contemplated. As the trial date approached for the first bellwether case, *Kerry Sims v. Bayer Corp., et al.,* No. 3:09-cv-10012-DRH-PMF (*Sims*), it became clear that the bellwether process had completely broken down. Considering the totality of the circumstances, including the manner of preparation undertaken by the parties and the status of that preparation, the Court concluded that obtaining bellwether verdicts at this time would not produce the hoped for results. Accordingly, the Court issued Case Management Order Number 53 (CMO 53), which directed the parties to

mediation, and suspended the entire bellwether process until further notice (Doc. 2225).[1]  The parties sought clarification of the status of MDL 2100, and the Court enters this order accordingly.

Although bellwether verdicts will not presently be used to inform the process, the ultimate goal of facilitating settlement remains; mediation is simply an alternative method for achieving this end.  The settlement process will be furthered by the continued pursuit of information that aids in shaping the parties' expectations and valuing the cases.  Accordingly, although the Court has suspended the bellwether process and continued any bellwether trials until further notice, the Court will not prevent the parties from continuing to pursue information that will further the mediation process.[2]  Considering these principles the Court **ORDERS** as follows:

**A.**     **Bellwether cases**

All bellwether trial dates are suspended and held in abeyance until noted in Section C below.  Although the Court has suspended the bellwether process, the Court finds that completing pending case-specific and generic discovery in these cases will provide information that is critical to the valuation of cases and to a

---

[1]  The Court made its decision after communicating with the judges in related state court proceedings.
[2]  This does not indicate that the Court is terminating case-specific deadlines that have already closed - for instance expert report deadlines in the *Sims* case.  In the event that mediation is not successful and the *Sims* case proceeds to trial, the Court will evaluate such issues at that time.

successful mediation process, as well as preparation for trials should the Court order them to resume. Accordingly, the Court **ORDERS AS FOLLOWS:**[3]

1. **The Four Pulmonary Embolism Cases**:[4]

    a. **Generic Experts:** Generic expert reports and rebuttals have been exchanged; generic expert depositions have been taken; and generic expert motions were filed and ruled on by the Court.

    a. **Specific Experts:** Specific expert reports and rebuttals have been exchanged; specific expert depositions have been taken; and specific expert motions were filed and ruled on by the Court.

    b. **Core Case-Specific Discovery**: Core case-specific discovery has been completed in these cases.

---

[3] *See* Amended Case Management Orders 24 and 37.75 (Doc. 1329, Doc. 2215); Case Management Orders 32, 37, 43 (Doc. 1666, Doc. 1917, Doc. 2049); the operative bellwether trial schedule (Doc. 1771 & 1735 (duplicate)); and related dates and deadlines established in open court, case management conferences, and other hearings are terminated and held in abeyance until further notice.

[4] Selected in accord with Case Management Order Number 32 (Doc. 1666): (1) *Sims v. Bayer Corporation, et al.* No. 3:09-cv-10012; (2) *Bradish v. Bayer Corporation, et al.* No. 3:09-cv-20021; (3) *Fender v. Bayer Corporation, et al.* No. 3:09-cv-20036*
(4) *Laforet-Neer v. Bayer Corporation, et al.* No. 3:10-cv-10223.

2. **The Three Gallbladder Cases**:[5]

   a. **Generic Experts:** Generic expert reports and rebuttals have been exchanged. The generic expert depositions scheduled to begin on December 12, 2011 and to end on January 20, 2012 shall proceed in accord with the relevant case management orders. However, the parties need not submit generic expert motions to the Court at this time (*i.e.* the deadlines for filing generic gallbladder expert motions, responses, and replies are terminated until further notice).

   b. **Case Specific Experts:** Case-specific expert reports and rebuttals have been exchanged. The case-specific expert depositions scheduled to begin on December 19, 2011 and to end on January 27, 2012 shall proceed in accord with the relevant case management orders. However, the parties need not submit case-specific expert motions to the Court at this time (*i.e.* the deadlines for filing case-specific gallbladder expert motions, responses, and replies are terminated until further notice).

   c. **Core Case-Specific Discovery:** Other core case-specific discovery must be completed by March 30, 2012.

---

[5] Selected in accord with Case Management Orders 37 and 37.5 (Doc. 1917, Doc. 2215): (1) *Fulkerson v. Bayer Corporation, et al.* (No. 3:10-cv-20063); (2) *Griggs v. Bayer Corporation, et al.* (No. 3:10-cv-10272); and (3) *Nayback v. Bayer Corporation, et al.* (No. 3:10-cv-10233).

3. **The Venous Thromboembolism Cases:**

   a. **VTE Case Selection:**  Pursuant to Case Management Order Number 37.75 (doc. 2215) the parties exchanged their VTE trial-pool selections on December 16, 2011.  The parties exercised any veto with regard to VTE trial-pool selections on December 20, 2011.  *Id*.  Pursuant to the same order, the parties were to provide the Court with their VTE trial selections on January 3, 2012.  This exchange did not occur because of the Court's order terminating the bellwether process (CMO 53).  Because continued discovery in a select group of VTE cases will further the mediation process, the Court Orders the parties to submit the names of the four VTE selections to the Court on January 16, 2012.

   b. **Generic Experts:**  Generic expert reports and rebuttals have been exchanged; generic expert depositions have been taken; and generic expert motions were filed and ruled on by the Court.

   c. **Case-Specific Experts:** Plaintiffs' case-specific expert reports are due on January 23, 2012; defendants' case-specific expert reports are due on February 13, 2011; and rebuttals are due on February 27, 2012.  The case-specific expert depositions scheduled to begin on March 5, 2012 and scheduled to end on April 13, 2012 shall proceed in accord with the relevant case management orders.  However, the

parties need not submit case-specific expert motions to the Court at this time.

d. **Core Case-Specific Discovery:** Other core case-specific discovery must be completed by June 1, 2012.

B. **Other Court Orders:**

With the exception of certain dates and deadlines discussed in section A, above, the Courts' orders shall remain in full force and effect. To avoid any confusion, the Court specifically notes that the following:

1. **Plaintiff Fact Sheets:** The plaintiff fact sheet requirements established in Case Management Order Number 12 and further addressed in Case Management Order Number 19 and Amended Case Management Order Number 25 remain in full force and effect.

2. **Defendants' Fact Sheets:** The defendants' fact sheet requirements provided for in Case Management Orders 18, 20, and 21 shall remain in full force and effect.

3. **Discovery in the Oldest 100 Non-Bellwether Cases:** The Court's orders addressing core case-specific discovery in the oldest 100 non-bellwether cases remain in full force and effect. *See* Doc. 1866 and Doc. 1896. In other words, the defendants may continue with case-specific depositions of the plaintiffs in these individual cases.

4. **Case Management Order Number 39:**  This case management order provided for a "rolling" production of custodial file materials and FDA materials every thirty days, terminating on December 21, 2011.  **The Court hereby orders defendants to continue producing such materials every thirty days.  Thus, the next production date will be January 21, 2011**.

C.   **REINSTATEMENT OF BELLWETHER OR REMAND**

If the Court determines that the parties have negotiated in good faith but that reasonable minds simply cannot legitimately come together on settlement values, generally, for this litigation, and the Court determines that bellwether trials will serve a useful purpose, the Court will resume the bellwether process with the first trial to begin April 30, 2012.  In that event, deposition designations shall be filed with the Court no later than March 30, 2012.

If the Court determines that the parties have not acted in good faith during the negotiation process or that bellwether trials will be of no use and the parties have been unable to settle cases generally, the Court will begin the process of remanding cases to the transferor districts (or the proper districts of venue under CMO 9) at such time as the Court declares the settlement process at an impasse.

IT IS SO ORDERED.

David R. Herndon
2012.01.10 09:05:14
-06'00'

**Chief Judge**                                                                 **Date: January 10, 2012**
**United States District Court**