UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND RELEVANT PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>ALL CASES | 3:09-md-02100-DRH-CJP<br><br>MDL No. 2100<br><br>Judge David R. Herndon |

CASE MANAGEMENT ORDER NUMBER 62

<u>ORDER ESTABLISHING QUALIFIED SETTLEMENT FUND FOR GALLBLADDER RESOLUTION PROGRAM AND APPOINTING FUND ADMINISTRATOR AND LIEN RESOLUTION ADMINISTRATOR</u>

Upon the Motion to Establish Qualified Settlement Fund and Appoint Fund Administrator and Lien Resolution Administrator (the "Motion"), and for good cause shown, the Court hereby Orders:

1. The Court has entered CMO #60 announcing the Yaz Gallbladder Settlement. The Negotiating Plaintiffs Committee ("NPC") desires to establish a "Qualified Settlement Fund" ("QSF") to aid in administration of those settlements.

2. The <u>Yaz Gallbladder Qualified Settlement Fund</u> (the "Fund") is established as a QSF within the meaning of Treas. Reg. § 1.468B-1 and pursuant to the jurisdiction conferred on this Court by Treas. Reg. § 1.468B-1(c)(1).

3. The Garretson Resolution Group, Inc., doing business as Garretson Resolution Group ("GRG"), is hereby appointed as administrator (the "Fund Administrator") pursuant to the terms, conditions, and restrictions of the Escrow Agreement and is hereby granted the authority to conduct any and all activities necessary to administer this QSF as described in the Motion filed with this Court by the NPC.

4. The Fund shall be held at UMB, N.A. ("Bank"), a financial institution doing business in Denver, CO according to the terms, conditions and restrictions of this Order.

5. No bond is required, provided that all monies received by the QSF from the Defendants pursuant to Article II of the Settlement Agreement dated March 15, 2013 (the "Settlement Agreement"), which include all principal and interest earned thereon (the "Settlement Monies"), shall be deposited by the Fund Administrator in an investment agency account held in custody at the Bank, for the benefit of and titled in the legal name of the QSF and invested in instruments/securities comprised of: (a) United States Agency, Government Sponsored Enterprises or Treasury securities or obligations (or a mutual fund invested solely in such instruments); (b) cash equivalent securities including SEC registered money market funds and/or collateralized money market accounts; and/or (c) deposit and similar interest-bearing, or non-interest bearing accounts subject to Federal Depository Insurance Corporation protections as available.

6. The Bank shall be responsible for any and all investment related

decisions, following the instructions of the Fund Administrator and/or its investment advisor pursuant to these terms and conditions, such that the following investment policy is implemented: (1) safety of principal; (2) zero bank balance exposure; and/or (3) the use of zero sweep disbursement accounts. Notwithstanding the foregoing, the Bank shall not be allowed to distribute any income or principal from the QSF except upon instructions of the Fund Administrator, or, if requested, upon the order of this Court upon the motion of the NPC or the Fund Administrator.  The Fund Administrator retains the right to remove the Bank, and may designate a replacement bank, upon the written consent of the NPC.  In the event of such replacement, the terms and conditions of this Order, including, without limitation, those addressing bond requirements, investments, and distributions from the QSF, shall apply to any such replacement bank.

7. The Fund Administrator shall not be liable for any losses as a result of investing the Settlement Monies as directed by the Court.  Any such losses shall not be recoverable from the NPC, the Defendants or any settling Claimants and/or their counsel, none of whom shall have any responsibility for the Fund Administrator's and the Bank's performance.  Receipt and/or investment of the Settlement Monies shall be confirmed to NPC by the Fund Administrator as soon as practicable by account statement or other reasonable method not to exceed 15 days from receipt of the Settlement Monies by the Bank.

8. The Fund Administrator is authorized to effect qualified assignments

of any resulting structured settlement liability within the meaning of Section 130(c) of the Internal Revenue Code to the qualified assignee, and to take all actions as provided in the Motion filed with this Court by the NPC, following the terms of the Settlement Agreement entered by this Court as CMO 60.

9. Upon final distribution of all monies paid into the QSF, the Fund Administrator shall take appropriate steps to wind down the QSF and thereafter shall be discharged from any further responsibility with respect to the QSF.

10. GRG is appointed as the Lien Resolution Administrator ("LRA") for the Gallbladder Settlement Program, as defined in the Settlement Agreement (Doc. No. 2739-1). As the LRA, GRG shall identify and resolve, subject to the terms of its contract with NPC, the healthcare liens and reimbursement claims described in the Settlement Agreement, which may include those related to federal Medicare Parts A and B, as contemplated by the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b); Medicare Part C plans; Medicaid; private insurance plans; and certain other governmental health care programs with statutory reimbursement or subrogation rights (such as TRICARE, the Veterans' Administration, and Indian Health Services).

11. To facilitate the LRA's identification and resolution of these liens and reimbursement claims, all Plaintiffs who are participating in the Gallbladder Resolution Program, and all attorneys who are representing such Plaintiffs, shall comply with the processes, programs, and procedures established by the LRA for the identification and resolution of these liens and reimbursement claims.

12. The LRA shall have the authority (1) to act as agent for the settling Plaintiffs for the sole purposes of identifying and resolving the aforementioned liens and reimbursement claims, (2) to receive and release protected health information and individually identifiable health information, but only as required to satisfy their obligation to resolve lien and reimbursement claims, and to perform the other functions specified in Case Management Order Number 56 (Doc. No. 2398), subject to the terms of that order, and (3) to identify and resolve the aforementioned liens and reimbursement claims.

**SO ORDERED:**

Digitally signed by
David R. Herndon
Date: 2013.09.26
14:54:10 -05'00'

**Chief Judge**  **Date: September 26, 2013**
**United States District Court**