UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

------------------------------------------------------------

| | |
|---|---|
| IN RE YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | 3:09-md-02100-DRH-PMF<br><br>MDL No. 2100 |

------------------------------------------------------------

| | |
|---|---|
| **This Document Relates to: ALL CASES** | Chief Judge David R. Herndon |

### CASE MANAGEMENT ORDER 65

**HERNDON, Chief Judge:**

The Court recently directed the parties to submit information to it relative to the remaining cases which have proven to be more difficult than the other cases for the parties to resolve their differences. It is entirely possible that the root cause of said difficulty is the failure of one or both parties to negotiate in good faith either initially, presently, or throughout since the remaining cases were carved out of the block of cases. That determination, however, will be left for another day.

The Court has carefully examined each submission and tested a number of scenarios. However, it is difficult for the Court the complete this task without further input from the parties.

The Court is ready to set cases for trial among the cases which are known by the parties as patent foramen ovale (PFO) cases and arterial thrombotic event (ATE) cases.

The trials in these cases will be characterized by no more experts than absolutely necessary, no more lawyers than absolutely necessary, no more witnesses than absolutely necessary and no more time allowed per side than absolutely necessary. Therefore, at a point in time when each side can appropriately assess these issues, the Court will solicit input on them as well.

The first trial will be set May 4, 2015 and the parties will submit joint proposed deadlines for a final pretrial, pretrial, motions in limine, Rule 702 motions (Daubert) (if any), and summary judgment motions in due course.

As for the cases to be tried, the Court understands that the plaintiffs want a traditional bellwether process. The Court further understands that the defendants have withdrawn their *Lexicon* waiver, declared the settlement talks to be at an impasse, more or less, and want the Court to continue to monitor discovery for trials. Defendants propose trials of residents or former residents of this district with remand of non-resident cases upon completion of discovery.

The Court finds that there are cases on the docket that can be tried here which will accomplish a number of objectives. First, there are cases which are original to this Court's docket which have been pending long enough to justify being set, but which also meet objectives that benefit the litigation as a whole. Secondly, it appears to this Court that there are sufficient cases generally to meet those same beneficial objectives without offending substantially the parties sense venue propriety. Tactical maneuvering is certainly part of every litigation as is hypocritical posturing. Early in this litigation when the Court was trying to

construct an appropriate bellwether plan, an endeavor treacherous on the best day when dealing with zealous advocates bent on skewing the process rather than producing a truly representative action, it was the plaintiffs who utilized the tactic of withholding the *Lexicon* waiver in an effort to manipulate the bellwether process from the beginning.

The Court pointed out in its bellwether order that such a short sighted maneuver is detrimental to a successful bellwether plan. The plaintiffs relented and a bellwether plan was implemented which included a *Lexecon* waiver on both sides. While the Court is not planning a bellwether system of trials, what is clear is that (1) MDL 2100 is still functioning in an effort to marshal discovery common to all cases, (2) even case specific discovery is very beneficial to a broad spectrum of cases in order to get a glimpse into what makes up a case generally and the make-up of that genre of case specifically within the inventory, (3) the rulings of the Court, while not necessarily the last word on the issues contained therein, give the parties some insight into potential rationale in court rulings, and (4) jurys' findings regarding liability and money damages, if any, will serve as a means of insight into how a jury perceives the various types of cases.

In order to accomplish the Court's objectives, the Court orders the parties to pursue case specific discovery in 40 plaintiff's cases as follows:
The plaintiffs and defendants will each designate 4 PFO plaintiffs.

The plaintiffs and defendants will each designate 2 plaintiffs in the following categories:

1. New oral contraceptive (OC) user, non-smoker, BMI 28 or less.
2. Switching OC user, non-smoker, BMI 28 or less.
3. New OC user, smoker, BMI 28 or higher.
4. Switching OC user, smoker, BMI 28 or higher.

For each of the four categories above, the parties shall designate two plaintiffs in each of the four age categories: through age 29, 30 through 39, 40 through 49, 50 plus.

The Court reserves the right to increase the pool if the parties treat this process like a partisan bellwether plan picking only the best and worst cases.

The plaintiffs that are designated by each party shall be plaintiffs that each side can agree will be tried in this district, either because her case is properly venued in this district or because the parties agree to waive *Lexicon.*

From this designation of cases, the Court will select which case goes first and which cases will serve as the backup cases. The Court will also determine future trial dates at a later time.

**SO ORDERED:**

Digitally signed by
David R. Herndon
Date: 2014.08.28
15:15:58 -05'00'

**Chief Judge**                                                       Date: August 28, 2014
**United States District Court**