UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

------------------------------------------------------------ X

IN RE YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

3:09-md-02100-DRH-PMF

MDL No. 2100

------------------------------------------------------------

**This Document Relates to:**

Judge David R. Herndon

**ALL CASES**

## CASE MANAGEMENT ORDER NUMBER 70

**HERNDON, District Judge:**

### I.   INTRODUCTION

This multidistrict litigation was created in the fall of 2009. At that time, there were several hundred pending actions. The litigation quickly ballooned to include thousands of cases. At its height, this multidistrict litigation included nearly 12,000 files with multiple plaintiffs per file and was declared the largest multidistrict litigation in the nation. Since that time, thousands of cases have been resolved, reducing the number of pending files from nearly 12,000 to approximately 3,400.[1]

As to these pending files, generic discovery and likely litigation-wide motions under the aegis of this MDL remain to be completed. This Court intends

---

[1] As of February 13, 2015, a search of the Court's docket reflects 3,447 open MDL 2100 actions. The defendants indicate their records show that approximately 2,000 cases involving 2,500 alleged users of the subject drug are pending in this MDL.

to complete its duties attendant thereto. As that process runs its course, it is entirely possible that a portion of the remaining inventory of cases will be settled; at least one of the remaining injury types (VTE) may see some cases compromised. However, given the history of this litigation, the undersigned judge has become convinced that the strategy going forward, on the part of the defendants, is one of attrition not market place analysis in the VTE cases and virtually not negotiating the ATE cases. Therefore, even though an MDL judge certainly can and should be helpful to the litigation, part and parcel to the pretrial discovery by facilitating settlement, but when that settlement posture must come from wearing everyone down over time or expecting an entire group of catastrophically injured women, for the most part, to simply drop their claims, the MDL judge is not properly exercising his duties by simply standing by or dragging the pretrial proceedings out. The defendants have refused to try any non-original cases in this district by not waiving *Lexecon*.[2] That, combined with Sixth Amended Case Management Order Number 9 ("CMO 9") (MDL 2100 Doc. 3171, Agreed Order Regarding Direct Filing of Actions in the Southern District of Illinois

---

[2] *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 28, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998). In *Lexecon,* the Supreme Court held that, after an MDL transferee court has concluded pretrial proceedings, the court cannot then transfer the case to itself for trial under Section 1407(a). *Lexecon*, 523 U.S. at 26, 118 S.Ct. 956. Rather, because Section 1407(a) employs the term "shall," it obligates the JPML—and no other entity—to either dismiss an MDL action following pretrial proceedings, or to remand the MDL case to its original transferor court when, "at the latest, … pretrial proceedings have run their course." *Id.* at 34–35, 118 S.Ct. 956. However, after *Lexecon*, courts have concluded that the right to a § 1407(a) remand is waivable. *See e.g., Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 615–16 (7th Cir. 2009); *In re African–American Slave Descendants Litig.*, 471 F.3d 754, 756 (7th Cir. 2006); *In re Carbon Dioxide Indus. Antitrust Litig.*, 229 F.3d 1321, 1325–26 (11th Cir. 2000). *Lexecon* made clear that § 1407(a) is "a venue statute that … categorically limits the authority of courts (and special panels) to override a plaintiff's choice [of forum]." 523 U.S. at 42. Objections to venue generally are waivable. *See U.S. v. Knox,* 540 F.3d 708, 716 (7th Cir. 2008) (although important venue is waivable)*.*

and Service of Process in Cases Naming Particular Defendants), eliminate this Court's ability to schedule a trial in this venue for any case other than a case filed in this district originally and for which this district is the "home" district under CMO 9.[3]

Consequently, the Court believes it is necessary to establish a procedure for petitioning the Judicial Panel on Multidistrict Litigation for remanding viable cases to the appropriate districts, keeping the requirements of CMO 9 in mind. It is also necessary, at this time, to revise and clarify the Court's plan for moving this litigation forward.[4]

## II.     RESOLVING NON-VIABLE CASES

The defendants insist there are member cases, a great many of them filed in the last year, which are not "viable" cases for one reason or another. Primarily, the assertion is that there are cases where no subject matter jurisdiction exists because of a lack of diversity.[5] The defendants have also alleged there is a sizeable group characterized by plaintiffs who simply did not consume the subject matter pharmaceuticals. Whether either assertion is correct or whether there are other fatal defects in cases or the Court asserting jurisdiction, the Court agrees with the

---

[3] At present, the only two cases the Court is aware of that fit that description are *Robertson v. Bayer Healthcare Pharmaceuticals Inc. et al.*, 3:11-cv-11202 and *Schuchert v. Bayer Healthcare Pharmaceuticals Inc. et al.*, 3:10-cv-11979. The PSC, however, should query their constituency to identify any others.

[4] In drafting this order, the Court has considered arguments raised by both sides during recent monthly status conferences. In addition, both sides have submitted proposals to the Court regarding the matters addressed in this order.

[5] The defendants state that they have identified approximately 75 cases with jurisdictional issues, 100 cases that have not been served (including some duplicate actions), and 100 gallbladder cases that have not been settled.

defendants. There is no sense in remanding cases that simply will have to go through a pretrial ritual of sorting out their blemishes only to be dismissed forthwith. Instead, the Court will have the parties address these issues prior to remand.

**Consequently, the Court ORDERS as follows, with regard to RESOLVING NON-VIABLE CASES**:

1. **Cases Lacking Subject Matter Jurisdiction:** For any member cases in which the defendants presently believe the Court lacks subject matter jurisdiction, defendants shall file an appropriate motion no later than 30 days from the docketing of this order. Counsel for said member cases shall file responses no later than 14 days after the filing of said motions.

2. **Duplicate Actions:** Defendants assert there are a substantial number of cases in which plaintiffs have duplicate cases pending. Plaintiffs are directed to check their inventory and voluntarily dismiss any duplicate cases no later than 30 days from the docketing of this order. The defendants are likewise directed to examine their inventory for duplicate actions. After the time for voluntarily dismissing duplicate cases has passed, the defendants shall notify the appropriate plaintiff's counsel of any remaining duplicate actions. Any plaintiff receiving notice from the defendants shall have 10 days to voluntarily dismiss the duplicate action. If timely action is not taken, the defendants shall file a motion to dismiss in the appropriate member action accompanied by a motion for attorney fees

4

for the time spent preparing the motion. Notices sent by defendants with regard to duplicate actions should be sent out no later than 60 days from the docketing of this order. The Clerk of the Court will also work to identify duplicate actions and the Court will take *sua sponte* action when appropriate.

3. **Gallbladder Cases:** Defendants further assert that there are 100 gallbladder cases that have not gone through the gallbladder resolution program. The defendants will, no later than 60 days from the docketing of this order, identify those cases and confer with the Plaintiffs' Steering Committee (PSC) for a resolution or bring the matter to a monthly conference for discussion. The PSC will confer in good faith to resolve this issue.

4. **Plaintiffs Who Have Not Consumed the Subject Pharmaceuticals:** Defendants maintain that there are plaintiffs with filed cases who never consumed YAZ, Yasmin or any of its generic equivalents. The defendants are directed to identify those plaintiffs whom they believe populate this category of the inventory. Lead counsel of the PSC are then directed to contact those plaintiffs' individual counsel for the purpose of advising of the allegation. Plaintiff's counsel then have the option of either (1) submitting plaintiff to a deposition taken by counsel confined to the issue of the prescription of and taking of the subject matter pharmaceuticals and other oral contraceptives over the relevant period of time (for purposes of this

5

identification deposition, two years pre-injury and one year post-injury) or (2) submitting an affidavit outlining all contraceptives taken by the plaintiff during the above relevant time period and who prescribed it and providing a medical release for all such providers. Said deposition or affidavit shall be complete within 30 days of the identification by the defendants. Thereafter, if the plaintiff did not, in fact, take the defendants' product, plaintiff shall dismiss her case within twenty-one days of the completion of the deposition or submission of the affidavit or show cause why the Court should not summarily dismiss her case. If the plaintiff, who was the patient, died as a result of her injuries or has since passed away, then the above requirements shall be met with the personal representative supplying the records on which the evidence would be based at trial.

### III.     GENERIC DISCOVERY

Simultaneous to the above issues being resolved, the parties will finish what is commonly known as the generic discovery, that is discovery which is applicable across the board to all pending cases or to all VTE cases or to all ATE cases, not case specific discovery.

## IV. PAST RULINGS ON SPECIFIC PRETRIAL ISSUES

As both a complement to generic discovery and in preparation for case specific trials, the Court ruled on specific pretrial issues. Those rulings are still in force and are identified below:[6]

| | | | |
|---|---|---|---|
| **1.** | 06/29/2011 | Doc. 1783 | ORDER REGARDING PERSONAL USE TESTIMONY. |
| **2.** | 11/15/2011 | Doc. 2104 | CASE MANAGEMENT ORDER NUMBER 46 Regarding Bayer's Motion to Compel Discovery From Plaintiffs' Designated Expert Dr. Lidegaard |
| **3.** | 12/16/2011 | Doc. 2182 | CASE MANAGEMENT ORDER NUMBER 47 DENYING the following four motions to exclude expert testimony: 2023 Bayer's Motion to Exclude Testimony of Plaintiffs' Expert David A. Kessler, M.D. and Memorandum of Law in Support; 2026 Bayer's Motion to Exclude Testimony of Plaintffs' Expert Suzanne Parisian, M.D. and Memorandum of Law in Support; 2016 Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Cheryl D. Blume, Ph.D. and Memorandum of Law in Support; 2015 Bayer's Motion to Exclude Testimony of Plaintiffs' Expert John Abramson, M.D. and Memorandum of Law in Support. |
| **4.** | 12/16/2011 | Doc. 2183 | CASE MANAGEMENT ORDER NUMBER 48 denying 2020 Motion to exclude the expert testimony of Dr. Green. |
| **5.** | 12/16/2011 | Doc. 2184 | CASE MANAGEMENT ORDER NUMBER 49 DENYING THE FOLLOWING FOUR MOTIONS TO EXCLUDE EXPERT TESTIMONY: 2028 Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Charles T. Stier, Jr., Ph.D. ; 2027 Bayer's |

---

[6] The Court notes that there are a number of other pretrial orders on file. The parties should presume that an order is still in force unless the Court states otherwise. If the parties believe there is a reason that an order is obsolete and should not be applicable to a current situation, they should seek clarification from the Court.

|   |   |   | Motion to Exclude the Testimony of Plaintffs' Expert Henry M. Rinder, M.D.; 2025 Bayer's Motion to Exclude Testimony of Plaintiffs' Expert John E. Maggio; 2030 Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Jan Rosing, Ph.D. |
|---|---|---|---|
| 6. | 12/16/2011 | Doc. 2185 | CASE MANAGEMENT ORDER NUMBER 50 DENYING THE FOLLOWING FOUR MOTIONS TO EXCLUDE EXPERT TESTIMONY: 2024 Bayer's Motion to Exclude Testimony of Plaintiffs' Expert David Madigan, Ph.D.; 2021 Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Stephen B. Hulley; 2019 Bayer's Motion to Exclude Testimony of Plaintiffs' Expert B. Burt Gerstman; 2018 Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Curt D. Furberg. |
| 7. | 12/16/2011 | Doc. 2186 | CASE MANAGEMENT ORDER NUMBER 51 DENYING THE FOLLOWING TWO MOTIONS TO EXCLUDE EXPERT TESTIMONY; 2110 Exclude Testimony of Dr. Gabrielle Bercy-Roberson, M.D.; 2017 Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Anthony DiSciullo, M.D. |
| 8. | 12/16/2011 | Doc. 2187 | CASE MANAGEMENT ORDER NUMBER 52 DENYING 2022 Motion to exclude testimony of expert Robert Johnson. |

V. **PENDING PRETRIAL MOTIONS**

**Pending Pretrial Motions:** There are three outstanding motions relating to pretrial issues: (1) Motion to Compel Bayer to Produce Full and Complete Responses (Doc. 2162); (2) Motion to Exclude Opinions in the Second Supplemental Report of David A. Kessler (Doc. 2223); and (3) Motion to Exclude Opinions in the Addendum to the Expert Report of B. Burt Gerstman (Doc. 2224). The defendants have withdrawn the motions to exclude (Doc. 2223 and Doc.

8

2224). Accordingly, these motions will be removed from the Court's docket. The motion to compel (Doc. 2162) is DENIED as MOOT and will also be removed from the Court's docket.

## VI.     CMO 68 CASES

In addition, to ongoing generic discovery, the parties have been pursuing case specific discovery pursuant to CMO 68 (Doc. 3569 and 3569-1). In light of the defendant's settlement and *Lexecon* strategy going forward, with the exception of the two Southern District of Illinois cases set by that order,[7] the objective of that order cannot fully be met. However, as the Court pointed out at the latest monthly conference there is no reason for the recent work on those cases to go to waste. Therefore, since there is no legal authority to try those cases in this district, promptly upon completion of the MDL pretrial consolidated discovery process, the Court will petition the JPML to remand the CMO 68 cases as the first round of cases to be remanded to their districts of origin in accord with CMO 9.

## VII.     DISAGREEMENT REGARDING AMENDED CMO 24 AND CMO 29

As depositions are pursued and set in individual cases, there has been discussion regarding Amended CMO 24 (Doc. 1329) and CMO 29 (Doc. 1590) . Specifically, questions have been posed as to whether the orders are still viable and govern current trial preparations. Amended CMO 24 was originally a bellwether order and most of it is obsolete. However, there is some question as to

---

[7] *Robertson v. Bayer Healthcare Pharmaceuticals Inc. et al.*, 3:11-cv-11202 and *Schuchert v. Bayer Healthcare Pharmaceuticals Inc.* et al., 3:10-cv-11979.

the continued viability of Section V - Case Specific Core Discovery. More specifically, the question is whether paragraph 11 is operative now and in the future. Paragraph 11 provides as follows:

> In connection with any individual plaintiff's case, the parties may take the depositions of plaintiff's prescribing physician(s), primary treating physician(s), as well as two additional depositions per side. In the event either party seeks discovery beyond these depositions in an individual plaintiff's case, agreement, in writing, between Liaison Counsel must be obtained or, if no agreement can be obtained after a good faith attempt, leave of Court must be obtained upon a showing of good cause.

(CMO 24 § V ¶ 11).

The balance of CMO 24 is, in fact, obsolete and is of no current utility. The Court hereby adopts the language of paragraph 11 for the purposes of providing guidance going forward. In addition, to address disagreement that seems to have developed over the interpretation of paragraph 11, the Court adds the following clarification: The Court has not and does not intend to modify, amend or disregard the Federal Rules of Civil Procedure and the time allowances or constraints placed on depositions. The phrase primary treating physician means the medical health provider responsible for the treatment, management, and care of the plaintiff for the injury or injuries which are at issue in MDL 2100. A plaintiff may have more than one primary treating physician provided each is responsible for a different aspect of the injury or has a different specialty, or treating the same area of the body as another primary treating physician but

treating a different injury, or is covering a different period of time but treating the same injury.

CMO 29 remains the law in MDL 2100 for the purpose of ongoing pretrial matters. The parties, however, have had discussions with the Court regarding the task of scheduling physicians' depositions. In the first instance, if defendants want a plaintiff's physician's deposition scheduled, defense counsel should contact plaintiff's counsel with a reasonable variety of dates in order to provide plaintiff's counsel adequate flexibility to work with the physician's schedule and counsel's schedule. Plaintiff's counsel shall make every effort to promptly schedule the deposition with the physician's staff. If plaintiff's counsel either does not wish to make the effort, becomes frustrated in her attempts to schedule the deposition, or fails to make the effort or attain successful results with 7 business days, defense counsel's paralegal or office administrator may make the effort after giving plaintiff's counsel 36-hours notice that she will be having her staff contact the doctor's staff. If plaintiff's counsel is able to schedule the deposition in the intervening 36 hours, the matter is moot. If not, defense counsel's staff may proceed. However, in no circumstances shall they speak of any matters other than the scheduling issues. Plaintiff's counsel may waive the 36 hour buffer if she wishes based on her lack of desire, frustration or any other reason. Under no circumstances shall this provision be interpreted as authorization for defense counsel to speak with a treating physician outside the parameters of an on record

deposition inquiry, unless some other authority becomes the operative vehicle for such a conversation.

## VIII.   REMAND MEMORANDUM

The parties will meet and confer on a detailed memorandum that will accompany the files that are remanded. The memorandum will be designed to advise the transferor judges of what has been accomplished regarding generic pretrial discovery and rulings. To the extent that there are unresolved disagreements over the content of the memorandum, each side shall submit its proposal for amendments to the memorandum. **The submissions of the memorandum and each party's proposed amendments shall be *in camera* and shall be emailed to the Court no later than June 30, 2015**.

## IX.   TRIAL SELECTION AND SCHEDULE

The Court finds from the discussions at the last two monthly conferences that the lead case which was set by CMO 68, *Robertson*,[8] is not likely to be in a position to start trial and the Court has ordered plaintiff's counsel, as plaintiff's representative, to provide the Court with a status update.[9] Further, the Court finds that the case which, pursuant to CMO 68, was set to be the second trial,

---

[8] *Robertson v. Bayer Healthcare Pharmaceuticals Inc. et al.*, 3:11-cv-11202.
[9] *Robertson v. Bayer Healthcare Pharmaceuticals Inc. et al.*, 3:11-cv-11202 (Doc. 7). Counsel for plaintiff Robertson responded by filing a motion to withdraw as counsel of record (Doc. 11), declaration in support thereof (Doc. 12), and memorandum in support thereof (Doc. 13).  The Court is presently reviewing these pleadings.

*Schuchert*,[10] will not be ready for trial on May 15th. Considering the above, the Court **ORDERS** as follows:

**The *Robertson* trial date is cancelled until further notice of the Court. The *Schuchert* case is hereby set for trial on June 15, 2015. Trial will be restricted to ten trial days.** The parties can expect restrictions to be placed on the trial to insure that this case is treated as a normal trial (time for each side, witnesses, participants, etc.), not as a bellwether trial, not a "show trial." The Court is simply setting this case as a trial on its docket that has not settled and is ready to be tried. As to the *Schuchert* case, the Court adopts the following trial schedule:

| March 6, 2015 | Fact Discovery closes |
|---|---|
| April 18, 2015 | Plaintiff expert reports due |
| April 25, 2015 | Defense expert reports due |
| May 4, 2015 | Plaintiff rebuttal expert reports due |
| May 5, 2015 | Final Pre-trial order due |
| May 5-16, 2015 | Expert discovery |
| May 16, 2015 | Expert discovery closes |
| May 18, 2015 | Summary judgment and *Daubert* motions due |
| June 2, 2015 | Opposition briefs to summary judgment and *Daubert* due |
| June 15, 2015 | Trial starts |

---

[10] *Schuchert v. Bayer Healthcare Pharmaceuticals Inc. et al.*, 3:10-cv-11979.

13

## X.   REMAND

On July 1, 2015, or as soon thereafter as practicable, the Court will petition the JPML for the remand of the first group of cases to be remanded to their transferor districts, or their appropriate home districts under CMO 9; the first group being comprised of the CMO 68 list of cases less those that have been dismissed, settled or tried.

**As for the balance of the CMO 68 cases, the Court ORDERS as follows:**

The parties are **DIRECTED** to advise the Court of any cases that have resolved. As to the cases that have not been resolved, <u>any depositions currently scheduled shall remain scheduled unless cancelled by the deponent for reasons beyond the control of the parties</u>.

**FURTHER**, for those cases that have not resolved, the pretrial proceedings until remand shall be accomplished in stages as follows:

- **Stage One:** The first stage of the pretrial preparations shall be to take the depositions of the plaintiff, the prescribing physician and the physician plaintiff's counsel describes as the primary treating physician, defined for purposes of this paragraph as the physician who is most able to testify to the most significant aspects of plaintiff's injuries. This stage should be completed no later than April 30, 2015.

- **Stage Two:** During the second stage, the parties shall continue taking depositions as contemplated by former CMO 24, paragraph 11, discussed heretofore. This stage shall be completed no later than June 30, 2015.

The contemplation of the Court is that the parties will take whatever depositions are needed for purposes of discovery and trial so that as many of the cases as possible are ready or nearly ready for trial when remanded to their CMO 9 court of origin or transferor court (whichever most appropriately describes the forum of remand).

**IT IS SO ORDERED.**

Signed this 13th day of February, 2015

Digitally signed by David R. Herndon
Date: 2015.02.13 12:39:21 -06'00'

**United States District Judge**