# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICE AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) | 3:09-MD-02100-DRH-CJP<br><br>MDL No. 2100<br><br>Honorable David R. Herndon |
| This Document Relates to:<br><br>ALL Cases | ) ) ) ) ) | ORDER DENYING BAYER'S REQUEST FOR RELIEF BASED UPON ALLEGED VIOLATION OF THE PROTECTIVE ORDER |

This matter is before the Court based upon a letter dated December 10, 2018 filed on the MDL docket by defendant Bayer Pharma AG. Bayer asserts that counsel for the Commonwealth of Kentucky, working in cooperation with the Plaintiffs' Steering Committee, is in violation of the protective order entered in this multidistrict proceeding. Upon review of the record, the prior Orders of this Court, and the directive made to this Court by the Judicial Panel on Multidistrict Litigation, the Court finds that neither the PSC or the Commonwealth of Kentucky is in violation of the MDL protective Order, and Bayer's request for relief is denied.

Based upon the record before the Court, the Court finds that the Commonwealth of Kentucky has been engaged in litigation with Bayer over its marketing of drugs in violation of the Kentucky Consumer Protection Act since 2007. Initially the Commonwealth participated in proceedings initiated by 30

1

state attorneys general against Bayer for its marketing of Baycol in violation of the participating states consumer protection statutes. In 2009, those proceedings were re-opened to address violations by Bayer of the various state consumer protection acts concerning its off-label promotions for Yaz. In 2013, the Commonwealth of Kentucky re-opened those proceedings again to assert further violations of the Kentucky Consumer Protection Act in regard to Bayer's marketing of Yasmin and Yaz. In January of 2014, the Commonwealth of Kentucky filed an Amended Complaint that again asserted that Bayer's marketing of Yasmin and Yaz in the Kentucky violated the Kentucky Consumer Protection Act. The Commonwealth sought remedies including statutory civil penalties and injunctive relief. The Court rejects Bayer's contention that the Commonwealth has altered the legal basis for its claims or abandoned its pursuit of Bayer based upon violations of the Kentucky Consumer Protection Act.

In 2009, the JPML appointed this Court to preside over the litigation entitled: "*In Re: Yasmin and Yaz Drospirenone Marketing, Sales Practices and Products Liability Litigation.*" The Panel required that all claims alleging relief based upon Bayer's marketing and sales practices, as well as all products liability claims, be included within this Court's jurisdiction as the transferee court. The JPML did not base its Order upon the nature of the relief requested by the Plaintiffs. Instead, the JPML consolidated and coordinated cases based upon the common nature of the factual issues and causes of action asserted by the Plaintiffs.

Bayer encouraged the inclusion of all claims involving marketing and sales practices in these MDL proceedings.  In its Supplemental Memorandum concerning transfer of a specific action alleging unfair consumer practices, Bayer argued: "The Panel has captioned this MDL as 'In re Yasmin and Yaz (Drospirenone) *Marketing, Sales Practices* and Products Liability Litigation,' appropriately recognizing that actions like *Brownfield*, which focus on marketing and sales practices, are properly transferred." (Commonwealth's Exhibit D, at p. 7.) (Emphasis added by Bayer.)  Bayer further argued that transferring the *Brownfield* action, which asserted claims under a consumer protection statute claim "would serve the convenience of the parties and witnesses, save judicial resources, and promote just and efficient conduct of these actions." (*Id.* at p. 8.)

In July of 2013, the Kentucky Attorney General entered into an Agreement with the MDL PSC to share discovery from the *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*. The Commonwealth agreed to be bound by the MDL protective order, and agreed to pay an assessment to the MDL PSC. By these actions, the Commonwealth of Kentucky became entitled to share in MDL discovery and MDL work product. Since that time, the Commonwealth has avoided duplication of discovery by utilizing MDL documents, deposition and work product for the purposes of its litigation against Bayer.  These efficiencies are the intended goal of multidistrict proceedings.  See 28 USC §1407. Bayer makes no allegation that the Kentucky

Attorney General has publicly disclosed any information in violation of the MDL protective order.

Instead, Bayer contends that the mere fact that the MDL discovery and work product has been shared with the Commonwealth of Kentucky and used for purposes of Kentucky's state court litigation against Bayer violates this Court's Protective Order. (3:09-md-02100, Doc. 291, CMO #7.) Bayer bases this argument upon a single phrase in the Protective Order, which permits sharing of MDL discovery with "any attorney of record for claimants in other pending U.S. litigation alleging personal injury or economic loss arising from the alleged use, purchase or payment of Yaz/Yasmin …" *Id.* at 12, §III.B.9. Bayer interprets this phrase to require that the relief sought in the action must be in the form of compensatory damages calculated based upon the value of personal injury or economic loss. The Court disagrees with Bayer's interpretation of both what is in in the Order, as well as the intent of the Order.

Clearly, the record reflects that the Commonwealth asserts claims that Bayer's marketing of Yasmin and Yaz in Kentucky violated the Kentucky Consumer Protection Act. Further, the Commonwealth of Kentucky alleges that Bayer's violation of the Kentucky Consumer Protection Act caused individuals in Kentucky to suffer harm through personal injury and economic loss. Specifically, the Commonwealth has claimed:

> Plaintiff states it is a claimant suing for penalties under the Kentucky Consumer Protection Act as a result of Bayer's failure to disclose clinically significant information regarding the risks of their drospirenone containing

> combination formulations which caused personal injury and economic loss to the Commonwealth.

(Commonwealth's Exhibit H, Commonwealth's response to interrogatory no. 10.)

> [E]very consumer in Kentucky who purchased Yasmin or Yaz during the applicable time suffered economic loss, inasmuch as safer, less expensive oral contraceptives were easily available. Moreover, those consumers who suffered personal injury and resulting medical expenses and/or lost earnings due to their use of Yasmin or Yaz incurred additional economic loss, which was part of the basis for the settlements paid by Bayer in Yasmin/Yaz MDL.

(Commonwealth's Exhibit I, Commonwealth's supplemental response to interrogatory no. 9.)

The fact that the Commonwealth of Kentucky does not seek compensatory damages for the economic loss and personal injury allegedly suffered by women in Kentucky, but rather seeks civil penalties and injunctive relief, does not alter the fact that Kentucky alleges that such harms have occurred. The Commonwealth bases its claims upon Bayer's alleged violations of the Kentucky Consumer Protection Act. Such claims are encompassed in the MDL proceedings and intended to be included in the sharing procedures established by this Court. Nothing prohibits the Commonwealth of Kentucky from participation in the sharing provisions for MDL discovery and work product.

The Court further finds that Bayer offers no compelling reason to prohibit the Commonwealth of Kentucky from participation in MDL discovery and work product. The alternative would be a wasteful duplication of effort, which would penalize the last remaining Plaintiff. After benefiting from consolidated discovery with thousands of cases pending against Bayer, Bayer should not now gain the

litigation advantage of imposing the costs of duplicating discovery upon the one remaining Plaintiff that Bayer seeks to prohibit from using prior discovery and work product. Further, the German privacy law issues raised by Bayer are addressed by compliance with the MDL protective order.

The Court also finds that much of the information Bayer contends is confidential is already within the public domain. The expert reports of Dr. Kessler and Dr. Parisian have been posted on PACER since 2011. As made clear by the record provided by the Commonwealth, Dr. Parisian's report in the Kentucky state court action contains the same information previously disclosed on PACER. The Commonwealth has also established that Bayer has known of the Commonwealth's access to MDL data for some time, yet made no objection during deposition to allegedly protected exhibits, and made no timely objection to discovery responses provided months ago. The Commonwealth even produced to Bayer in August of 2018 a copy of the Assessment Agreement with the PSC permitting Kentucky full access to MDL data, yet Bayer waited until December 2018 to seek relief from this Court. Bayer therefore has not complied with the terms of the protective order, which require it to "immediately inform the Court in writing of all pertinent facts" relating to unauthorized disclosure of Confidential Information. (3:09-md-02100, Doc. 291, CMO #7, at VI.F.) In fact Bayer has reversed its position. In prior discussions with this Court concerning termination of the MDL, Bayer agreed that it would support transferring custody of the MDL document database to counsel representing Kentucky. Bayer's newly found
6

objection to the sharing of MDL discovery with the Commonwealth of Kentucky is therefore untimely, contradictory and devoid of proof of prejudice to Bayer.

However, to the extent that any clarification of this Court's prior Order is necessary, and consistent with the Order of the JPML establishing these multidistrict proceedings, the Protective Order entered by this Court (3:09-md-02100, Doc. 291, CMO #7) should be understood to permit disclosure of confidential information to "any attorney of record for claimants in other pending U.S. litigation alleging claims against Bayer based upon marketing, sales practices or products liability for Yasmin, Yaz or Ocella (drospirenone containing products.)" The intent of the phrase "alleging personal injury or economic loss arising from the alleged use, purchase, or payment of Yaz/Yasmin/Ocella" used in CMO #7, Section III.B.9, was to encompass all claims against Bayer arising from the marketing, sales practices and products liability for Yasmin and Yaz, including claims by state attorneys general for civil penalties and injunctive relief based upon violation of state consumer protection statutes.

Based upon the foregoing, Bayer's claim of violation of the MDL protective order, as a result of the sharing of documents, depositions, exhibits, expert reports, pleadings and any other discovery or work product materials from MDL 2100 with the Commonwealth of Kentucky for its use a state court action asserting claims under the Kentucky Consumer Practices Act, is DENIED. Based upon the specific terms of this Court's Orders, the intended interpretation of this Court's Orders and the instant clarification of this Court's Orders, as well as the

Order of the JPML establishing the scope of these proceedings, such a sharing of information is expressly authorized. Moreover, it is the intended result of coordinating state court discovery with MDL proceedings, and Bayer has failed to establish or timely assert any claim of prejudice.

The multidistrict proceedings for *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, MDL 2100, are near conclusion. Having determined that the Kentucky Attorney General and the PSC acted properly in sharing information pursuant to their Agreement and this Court's Orders, upon termination of these proceedings by the JPML, any further requests to lift confidentiality under the provisions of the MDL protective order (CMO #7), or to enforce terms of the MDL protective order (CMO #7) as to specific information, are hereby referred to the court where the relevant action is pending.

**IT IS SO ORDERED.**

Judge Herndon
2018.12.18 12:04:17
-06'00'

_____
David R. Herndon
United States District Judge